THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM
. SEARS, Respondent, *v.* WILLIAM R. TOBEY, Appellant.

1. MUNICIPAL CIVIL SERVICE— CLERK OF POLICE COURT OF SYRACUSE.
The clerk of the Police Court of the city of Syracuse is a member of the
civil service of the city and not of the state.

2. NOT A CONFIDENTIAL OFFICE.  The office of clerk of the Police
Court of the city of Syracuse, the duties of which are indicated in detail
by the city charter and not determined by the police justice in whom the
power of appointment is vested, and which consist of administering
oaths, taking depositions, adjourning proceedings in the absence of the
justice, giving a bond to the city for faithful performance, keeping a
record of proceedings, filing and preserving papers, and receiving and
paying over to the city treasurer all costs and fines, is not a confidential
office and, hence, is not exempt from classification in the competitive
schedule of the municipal civil service regulations or from the constitu-
tional provisions giving a preference to veterans.

3. EVIDENCE AS TO DUTIES OF OFFICE.  Since the duties of the clerk
of the Police Court of the city of Syracuse are defined by statute, it is
not competent for the police justice, in a quo warranto proceeding for the
determination of the title to the office of clerk under the Civil Service
Law, to give his opinion as to what are the duties of the clerk.

4. QUO WARRANTO — SCOPE OF JUDGMENT — RIGHT OF VETERAN TO
APPOINTMENT.  When the eligible list resulting from a municipal com-
petitive civil service examination for a non-confidential position included
in the competitive schedule of the municipal regulations contains the
name of one veteran, and another person is appointed, a written appoint-
ment of the veteran to the position by the appointing officer is necessary
before the court in quo warranto proceedings instituted on the relation of
the veteran can decree that he be inducted into office.  In the absence of
such appointment the jurisdiction of the court is exhausted when it
determines that the defendant is unlawfully in possession of the office and
orders a judgment of ouster, thereby creating a vacancy ; but the relator
will be entitled to compel his appointment by mandamus.

5. EVIDENCE — SUFFICIENCY OF CERTIFICATION OF COPY OF MUNICIPAL
CIVIL SERVICE REGULATIONS — OBJECTION.  In order to render available
on appeal an objection to the admission in evidence of a copy of munic-
ipal civil service regulations certified by the secretary of the state civil
service commission, on the ground that the certificate fails to state that
the copy had been compared with the original, as prescribed by section
957 of the Code of Civil Procedure, the specific defect must have been
pointed out on the trial ; a general objection that the paper was not prop-
erly certified is not sufficient.

382          People ex rel. Sears v. Tobey.          [Oct.,

Points of counsel.          [Vol. 153.

6. Certification of Copy of Municipal Civil Service Regula-
tions. The civil service regulations of a city, on file in the office of the
state civil service commission, may be sufficiently proved for use in evi-
dence by the production of a copy certified by the secretary of the state
commission in substantial compliance with section 933 of the Code of Civil
Procedure.

*People ex rel. Sears* v. *Tobey,* 8 App. Div. 468; 17 App. Div. 621,
modified.

(Argued June 8, 1897 ; decided October 5, 1897.)

Appeal from an interlocutory judgment and order of the
Appellate Division of the Supreme Court in the fourth
judicial department, entered August 3, 1896, which affirmed
an interlocutory judgment and order overruling a demurrer
to the complaint, and also from a final judgment and order
entered April 21, 1897, which affirmed a judgment in favor of
plaintiff, entered upon a verdict directed by the court, and
also affirmed an order denying a motion for a new trial on the
minutes.

The nature of the proceeding and the facts, so far as mate-
rial, are stated in the opinions.

*William S. Andrews* for appellant. The clerk of the
court of a police justice is a member of the civil service of
the state. (Const. of N. Y. [1848] art. 6, § 14; Amdt. of 1867,
art. 6, § 19; Const. of N. Y. art. 6, §§ 17, 18, 22; *Landon*
v. *Mayor, etc.,* 7 J. & S. 472; L. 1885, ch. 26, §§ 52, 53 ; L.
1847, ch. 475 ; Code Crim. Pro. §§ 148, 149 ; *McDonald* v.
*Mayor, etc.,* 32 N. Y. Supp. 280 ; *Sargent* v. *Gorman,* 131 N.
Y. 194; *People ex rel.* v. *Board of Public Parks,* 43 N. Y.
S. R. 525.) The position of police clerk is a confidential one,
and the mayor has no power to restrict the choice of the jus-
tice to candidates who pass an examination. (*In re Keymer,*
148 N. Y. 219.) The classification of an office as competi-
tive, although properly made, is abrogated when the duties
of such office are so enlarged as to bring it within the
exceptions contained in the statute. (L. 1876, ch. 443 ;
L. 1885, ch. 26, §§ 57, 60 ; L. 1895, ch. 336, §§ 2, 57 ; *Comfort*

v. *Fulton*, 13 Abb. Pr. 276; *People ex rel.* v. *Palmer*, 152 N. Y. 217; *Sargent* v. *Gorman*, 14 N. Y. Supp. 481; *People ex rel.* v. *Ransom*, 13 N. Y. Supp. 370.) The respondent failed to prove, by competent evidence, its allegations in regard to the civil service regulations of the city of Syracuse, and consequently any violation thereof. (L. 1883, ch. 354, § 8; Code Civ. Pro. §§ 933, 957; *Redford* v. *Snow*, 46 Hun, 370.) There was no proper certificate made by the municipal board in regard to relator's status as a veteran. (L. 1884, ch. 410, § 5.) The form of the judgment in the case is improper. (Code Civ. Pro. §§ 1948–1956; *People ex rel.* v. *Phillips*, 1 Den. 138; *People ex rel.* v. *Thacher*, 55 N. Y. 525; *People ex rel.* v. *Perley*, 80 N. Y. 624; *State ex rel.* v. *Norton*, 46 Wis. 332; *Andrews* v. *Covington*, 69 Miss. 740; *State ex rel.* v. *Hamilton*, 29 Campello [Neb.], 198; *Ellis* v. *May*, 58 N. W. Rep. 483; *Prince* v. *Skellin*, 71 Me. 361; *Tillman* v. *Otter*, 93 Ky. 601; *People* v. *Conan*, 13 Mich. 238; *People* v. *Miles*, 2 Mich. 348; *People* v. *Knight*, 13 Mich. 230; *People* v. *Moliter*, 23 Mich. 341.)

*William G. Tracy* for respondent. The clerk of the Police Court is a member of the civil service of the city and not of the state. (L. 1894, ch. 681, § 7; *People ex rel.* v. *Tobey*, 8 App. Div. 470; 1 R. S. [8th ed.] 373–376; Code Crim. Pro. § 74; L. 1885, ch. 56, §§ 52, 53; L. 1892, ch. 681, § 2; *People ex rel.* v. *Wright*, 150 N. Y. 444.) The clerk of the Police Court of Syracuse is not now and never has been a private secretary or deputy of the police justice, or a person occupying a confidential position. (*People ex rel.* v. *Palmer*, 152 N. Y. 217; *Chittenden* v. *Wurster*, 152 N. Y. 360; L. 1885, ch. 56, §§ 57–60; L. 1895, ch. 336, § 57; Code Crim. Pro. §§ 148, 149, 150; L. 1883, ch. 354; L. 1884, ch. 410; L. 1894, ch. 717; *People ex rel.* v. *Goetting*, 29 N. Y. S. R. 286; *People ex rel.* v. *Sutton*, 88 Hun, 173; *People ex rel.* v. *O'Brien*, 9 App. Div. 428; *In re Ostrander*, 12 Misc. Rep. 476; *People ex rel.* v. *Barker*, 14 Misc. Rep. 360; *People* v. *Hicks*, 15 Barb. 153.) The defendant is

384          People ex rel. Sears v. Tobey.          [Oct.,

Opinion of the Court, per Bartlett, J.          [Vol. 153.

bound by the classification of officers made by the mayor, and cannot question the same in this action. (*Chittenden* v. *Wurster*, 152 N. Y. 345.) That portion of the judgment inducting the relator into the office is proper. (Code Civ. Pro. §§ 1948–1951; Throop on Public Officers, §§ 297–299; *Hill* v. *State*, 1 Ala. 559; *United States* v. *Le Baron*, 19 How, [U. S.] 78; *Jeter* v. *State*, 1 McCord [S. C.], 233; *State* v. *Sykes*, 1 McCord [S. C.], 238; *People ex rel.* v. *Goetting*, 133 N. Y. 569; *People ex rel.* v. *Brush*, 146 N. Y. 61; *People ex rel.* v. *Lane*, 55 N. Y. 217.) Unless the relator is inducted into this office by the judgment in this action there will be a failure of justice in this case. (L. 1884, ch. 410, § 8; *Demarest* v. *Mayor*, etc., 147 N. Y. 203.) The respondent proved by competent evidence the civil service regulations in force in the city of Syracuse. (Code Civ. Pro. § 933; Underhill on Evidence, 538, § 142.) The court did not err in failing to submit to the jury the question as to whether there was a vacancy in the office. (L. 1884, ch. 410, § 8.)

Bartlett, J. This is a quo warranto proceeding, under sections 1948 and 1949 of the Code of Civil Procedure, to determine the title to the office of clerk of the Police Court of the city of Syracuse.

On the second of January, 1896, the relator, William Sears, having ascertained there would be a probable vacancy in the office of clerk, passed his civil service examination with a percentage of ninety-four and a half.

Immediately thereafter he applied to Frederick W. Thomson, police justice of the city, for appointment to the clerkship.

On the 22nd of January Robert H. Rickert, then clerk of the court, tendered his resignation, to take effect at some future time.

About the fifteenth of January the police justice applied to the municipal civil service board for the names of persons eligible to appointment as clerk of the Police Court, without prejudice as to whether or not the appointment was a confidential one and not subject to the civil service laws.

1897.]     People ex rel. Sears *v.* Tobey.     385

N. Y. Rep.]     Opinion of the Court, per Bartlett, J.

Thereafter, and about the 22nd of January, the commissioners certified to the police justice three names, William R. Tobey, the defendant, percentage 95; William McDermot, percentage 94½, and William Sears, the relator, percentage 94½, and at the same time certified that. William Sears had presented due proof that he was an honorably discharged soldier from the military service of the United States in the late civil war.

On the 27th day of January the relator applied to the police justice to be appointed clerk of the Police Court and the application was denied upon the ground that the Civil Service Law did not apply to that office and that the relator was not entitled to a preference for the reason that the office was a confidential position and excepted by statute from the provisions of the law giving a preference to soldiers.

On the same day the police justice appointed the defendant to fill the position and he has ever since continued to discharge the duties of that office.

The learned counsel for the defendant has ably argued a number of points in support of his contention that the defendant is entitled to retain his office. It is first argued that the clerk of the Police Court is a member of the civil service of the state and not of the city.

By section 7 of the Civil Service Act, as amended by chapter 681 of the Laws of 1894, the state commission is required to certify to the comptroller the names, &c., of those in the public service of the state, and in cities the financial officers are required to draw their warrants for the payment of persons duly appointed pursuant to the civil service regulations prescribed by the respective mayors.

We agree with the learned Appellate Division in the conclusion it reached in its opinion overruling the demurrer to the complaint, that this office exists by virtue of the charter of the city of Syracuse and is filled by an appointment made by the police justice of that city.

The office of police justice is created by the charter of the city; the salary of the clerk is fixed by the common council

49

of the city and is payable out of the funds thereof, and it follows that the clerk of the Police Court is in the civil service of the city of Syracuse, and the mayor of that city had power to provide that the office must be filled by a person certified as eligible thereto by the civil service examiners of that city.

It appears by the civil service regulations in force in the city of Syracuse at the time this proceeding was instituted that the office of police clerk was classified in Schedule B, which contained a list of offices to be filled .upon competitive examination.

This shows the practical construction that had been placed upon the office under the law by the municipal civil service board of the city of Syracuse.

The next point to be considered is the contention that this office is a confidential one, and, therefore, could not be included in the competitive list.

The charter of the city of Syracuse (L. 1885, ch. 26) was amended in 1895 (Ch. 336) in relation to the duties devolving upon the clerk of the Police Court. Section 57 reads as follows : " The police justice of said city shall appoint a clerk, who shall receive an annual salary to be fixed by the common council, in their discretion, and not to exceed one thousand dollars, payable in monthly payments, and shall hold office at the pleasure of the police justice, and shall have power to take oaths and acknowledgments, to examine under oath the informant and prosecutor and any witnesses he may produce, and take their depositions in writing, and cause the same to be subscribed by the parties making them, and to adjourn trial or proceedings in the absence of the police justice. The police justice may issue warrants upon depositions taken by the clerk as herein prescribed."

Section 58 provides that the clerk shall file with the city a bond with sureties in the penal sum of one thousand dollars, to be approved by the mayor and conditioned for the faithful discharge of the duties of his office.

Section 59 prescribes further duties for the clerk, to the

effect that he shall keep a faithful record of the proceedings of the Police Court and the business pertaining to the office of police justice, which record shall be open to public inspection, and shall properly file and keep all bonds, papers and documents pertaining to said office.

Section 60 provides that he shall receive all costs, fines, penalties and dues of every description, and shall pay over to the treasurer from time to time, to the credit of the contingent fund, all moneys received by him, and take his receipt therefor. (Am'd L. 1889, ch. 475.)

It is also his duty to present all records kept by him, and all accounts of money received by him, and of any other matters pertaining to his office, to the common council, at such times as it may require or prescribe.

From this it would seem that the police justice has no power to determine the duties to be performed by the clerk, as they are indicated in detail by the legislature.

We are unable to perceive anything confidential in these statutory duties. The position should doubtless be filled by a man of intelligence, as the duties are such as would require in their performance a fair order of ability. There is nothing secret or confidential as between the police justice and the clerk in the manner in which these duties are to be discharged. Indeed, they are essentially of a public character.

The clerk is called upon to handle some money in the way of fines collected, but he is treated as an independent officer, liable to the city, and a bond, with sureties to be approved by the mayor, is exacted for the protection of the municipality. In this connection it may be well enough to consider, in passing, a question of evidence that is presented upon this appeal.

After the relator and the defendant had rested their cases respectively, and the relator had put in his proofs in rebuttal, counsel for the defendant stated as follows : " Mr. Thomson is here now and we wish to show by him the duties of the clerk of the police court." To this there was a general objection, which was sustained, and the defendant excepted.

It is now claimed that this is reversible error. There are two answers to this suggestion. In the first place, it rested wholly in the discretion of the trial judge whether he would permit the defendant to open his case and again place Mr. Thomson upon the stand. He had been examined in chief at length by the defendant and cross-examined by the relator, and permitted to leave the stand without eliciting the proof now sought to be introduced.

A less technical and more satisfactory answer is found in the fact that the duties of the clerk of the Police Court, as already intimated, are purely statutory, and, under the circumstances, it was not competent for the police justice to give his opinion as to what were the duties of his clerk, as they had been fully defined by the legislature. We think this evidence was properly excluded.

The point made by defendant's counsel, that the classification of this office as a competitive one was abrogated when its duties were enlarged and defined by statute, it is unnecessary to consider, in view of the fact we do not regard the position as confidential.

The counsel for the defendant in his next point insists that the form of the judgment is improper; that the utmost to which the plaintiff was entitled in any event is a judgment of ouster, and it was not competent for the court to induct the relator into office.

This is a question of great importance, as a failure to provide, in a final judgment, for inducting the relator into office, will compel a resort to further litigation before his rights are finally determined.

My individual opinion is that the police justice, having decided to make an appointment of clerk, and receiving from the civil service commissioners three names from which to make his selection, the relator being the only veteran of the civil war, the Constitution compelled his appointment, and in fact worked that result precisely as the expressed will of the People at the polls ousts the candidate holding the certificate of election and seats the one actually elected.

As the majority of the court are unable to adopt this view, I am instructed to present the conclusions upon which this branch of the decision rests.

The written appointment of the relator to the position by the police justice is necessary before the court in quo warranto proceedings can decree that he be inducted into office; that in the absence of such appointment the jurisdiction of the court is exhausted when it determines that the defendant is unlawfully in possession of the office, and orders a judgment of ouster, thereby creating a vacancy; that the relator is entitled to compel the police justice to appoint him to the position of clerk by the writ of mandamus.

The defendant urges in a further point that the relator failed to prove his allegations as to the civil service regulations of the city of Syracuse and consequently any violations thereof. In other words, it is insisted that no common-law proof was made of these regulations. They consist of those prescribed by Mayor Ryan in 1884 and the amendments thereof by Mayor Amos in January, 1895.

The provisions in regard to the clerk of the Police Court are contained in the regulations of Mayor Ryan. The relator endeavored to produce the original regulations of Mayor Ryan, and proved that they could not be found with the civil service board or in the office of the city clerk, although at one time on file in the latter office.

He introduced the amendments to the regulations of Mayor Ryan made by Mayor Amos, found on file with the civil service board, with the approval of the state civil service board and its seal attached, and proved the signature of Mayor Amos thereto. Relator also introduced in evidence the regulations on file with the municipal civil service board, on which they acted.

These were all approved and attested by the state civil service board with the seal attached. Relator then introduced a certified copy of the proceedings of the state board, approving the civil service regulations of the city of Syracuse, and copies of the regulations of Mayors Ryan and Amos on file

in the office of the state civil service commission, duly approved by the state civil service board.

These were all certified by the secretary under the seal of the commission of the New York civil service commission as a true and correct transcript from the records of the commission and in his custody, and of the resolutions, minutes and proceedings of the commission in relation to the approval of the civil service regulations prescribed by the mayor of the city of Syracuse, and all amendments thereto, and of the whole thereof; and also as true and correct copies of all civil service regulations prescribed by said mayor and amendments made by him thereto and on file in the office of said commission.

There was a general objection that these papers were not properly certified, but no specific ground was stated pointing out wherein they were defective.

It is now insisted that they failed to comply with section 957 of the Code of Civil Procedure, which provides that where the transcript or certified copy of a record is declared by law to be evidence, and special provision is not made for the form of the certificate in a particular case, the person authorized to certify must state in his certificate that it has been compared by him with the original and that it is a correct transcript therefrom and of the whole of the original.

The failure to state in the certificate that it had been compared with the original is the point now taken. It is a sufficient answer to the objection that it was general in form and should have pointed out the specific defect so that it might have been corrected at the trial.

Still another answer is that this certification is a substantial compliance with section 933 of the Code, that provides for the certification by the secretary or clerk of any public body or board appointed in pursuance of law, under his hand, of the records in his office.

This certificate is very full and complete and avers that the copies annexed are true and correct, of all the papers and amendments and of the whole thereof, and sufficiently proved the civil service regulations of the city of Syracuse.

There are other points we do not deem it necessary to consider in detail. We think there was a proper certification made by the municipal board in regard to the relator's status as a veteran. We are also of opinion that there was no question of fact to be submitted to the jury.

The evidence upon which it was asked to go to the jury sought to reveal the relator's motive in applying for this office, which was wholly immaterial.

The final judgment appealed from is hereby modified, so as to strike therefrom any provisions which induct the relator into the office of clerk of the Police Court of the city of Syracuse, and as so modified is, in all respects, affirmed, together with the interlocutory judgment, and all orders from which an appeal was taken to this court, with costs.

O'Brien, J. (dissenting). If the position of clerk to the police justice of Syracuse was a confidential one within the meaning of the statute and the decisions of this court, the relator was not entitled to recover. This is conceded, and, therefore, neither argument nor authority is necessary in support of the proposition. The learned counsel for the plaintiff has not left us in any doubt with respect to his position upon this question. In order to show what relations must exist between the head of an office and his appointees to make the place confidential, he has placed upon his brief a liberal quotation from the opinion of this court as the result of the decision in the case of *People ex rel. Crummey* v. *Palmer* (152 N. Y. 217) and *Chittenden* v. *Wurster* (Id. 360). The quotation is as follows:

" Where the appointee is to receive, open, read and answer the letters of his chief, where he is to counsel and advise him with reference to the conduct and management of his office, sign his name to checks or warrants, collect and pay out his money, have the combination of his safe and the custody and control of its contents," the position is a confidential one.

" Where the duties of the position were not merely clerical, and were such as especially devolve upon the head of the office,

which, by reason of his numerous duties, he is compelled to delegate to others, the performance of which requires skill, judgment, trust and confidence and involves the responsibility of the officer or the municipality which he represents, the position should be treated as confidential."

" If, therefore, the statute casts upon an officer a duty involving skill or integrity, and a liability either personal or on the part of the municipality which he represents, and he intrusts the discharge of this duty to another, their relations become confidential."

If we look into the statute which authorizes the justice to appoint a clerk we find that the clerk is required to give a bond for the faithful discharge of his duties; that he has charge of all the papers of the office ; that he is to keep the records ; that he is to receive all fines and penalties, has power to take oaths and acknowledgments, to take affidavits, to examine complaints and draw depositions upon which warrants may be issued by the justice and to adjourn trials and proceedings in the absence of the head of the office.

It is quite difficult to conceive how all these things can be done without the existence of intimate personal relations between the justice and the clerk. It is not written in the statute that he is the clerk of any court, but simply the clerk of the police justice. In one of the cases above cited it was quite distinctly held that the clerk or personal attendant of a judge was a position confidential in character. I assume that the criminal magistrate of a great city, who is empowered to hold Courts of Sessions, may be a judge within the meaning of this rule. It is quite conceivable, too, that his clerk may receive, open, read and answer his letters and equally reasonable to suppose that such a judge may frequently have to examine and dispose of important questions of law and fact, and that he may call on his clerk to assist him in the discharge of such duties. We may also assume that such an important office had a safe in it for the use of the justice, and that the clerk was intrusted with the key or the combination or both.

It is quite clear, therefore, that this clerk is required, or may

be required, to perform duties which require skill, judgment, trust and confidence. How far the justice may be held responsible for his acts or his negligence or want of learning or skill, we cannot now say, but inasmuch as the justice is authorized to issue all criminal process upon papers prepared by the clerk, it is not difficult to see how he may be made responsible to individuals at least for things done or omitted by his subordinate.

When the criminal law is set in motion without jurisdiction, it frequently happens that the magistrate is held responsible for some wrong done to others, or at least put to great trouble and expense to defend himself. When he assumes this responsibility upon the faith of papers prepared by his clerk, he must necessarily repose a high degree of confidence and trust in him. I am quite unable to see how the relations of this clerk to the justice differ in any material respect from those of any other clerk to a judge. If the clerks or personal attendants of the judges of this court and the Supreme Court are confidential, what good reason is there for holding that the office in question is not confidential?

Whatever powers were specially conferred by statute upon this clerk, he must still be the clerk of the police justice, and he occupies such relations to him as that term reasonably implies.

A clerk in a bank or in a great financial office does not cease to be such when he is appointed a notary public, nor would the clerk to one of the judges of this court cease to be such if the legislature should confer upon him some special additional power. This brings me to the question which underlies the case.

It was tried and has been argued in this court upon the theory that the duties of the appointee and all the duties are to be found written in the statute; that we are not permitted to look to any other source for the actual relations existing between the justice and his clerk at the time of the appointment; that custom and the established practice of the office for years count for nothing; that the clerk could not possibly be intrusted with the key of the safe because the statute did

not require him to have it, and he could not possibly have been intrusted with the charge of the letters and correspondence since the statute said nothing on the subject. On the trial the defendant's counsel called the police justice as a witness and offered to prove by him what the duties of the clerk were. This was objected to by the plaintiff's counsel without stating any ground of the objection. The court sustained him and the defendant excepted. Unless it be true that it was legally impossible for any other relations to exist between the justice and his clerk than those specified in the statute, this ruling was error. The learned counsel for the plaintiff defends this theory by pressing upon us the proposition that the duties of the clerk are defined by the statute. But his sound legal judgment was not quite satisfied with this position since he has added to it another important fact, namely, that "there is no evidence that any other duties were performed by him." He is quite right in this statement. There is no such evidence and there could be none since the defendant was not permitted to give it. Had he been allowed to give the proof, who can say that it would not have shown that, under the actual practice and custom of the office for years, the clerk was required to do and actually did all the things and performed all the duties that this court has said creates confidential relations between a public officer and his clerk? The proposition that the legislature has attempted to regulate, minutely, all the relations between a judge and his clerk, is an extraordinary one. If such was the intention of the statute in this case, it is safe to say that it stands alone and is a solitary exception to all legislation on such a subject. But such is not the language or the meaning of the statute. There is a wide difference between powers and duties, and this clerk has vastly more power than the clerks of other judges, but his duties are the same in nature and character. What the legislature intended was, not to disturb the relations between the justice and his clerk, but to confer upon the latter special powers which could not be derived from the appointment. He was still the clerk of the justice, holding all the

relations to his chief that the term naturally implies, and bound to perform to that chief such duties as he might reasonably require of him. He could call on him for assistance in all matters pertaining to the duties of the office of police justice. The statute, by conferring other powers upon him, did not discharge him from any duty necessarily to be implied from his position as a clerk to the justice. The decision in this case really holds that the clerk of the police justice of Syracuse is not a clerk at all in the sense in which that term is commonly understood, but an independent officer, with powers and duties prescribed by statute, and just as independent of the justice as any other city officer was. He was not bound to take any orders from him or to render to him any service or assistance, since it was not written in the statute.

If all this be so it is quite remarkable that the legislature intrusted the justice with his selection and appointment, and still more remarkable that he was empowered to remove him at pleasure. If there were to be no confidential relations between the justice and his clerk the power of appointment and removal would naturally be left where it belonged, with the chief executive of the city. Moreover, until quite recently the appointment of any clerk was optional with the justice. It was left to him to say whether he needed a clerk or not, and can it be said that it was left to his discretion to appoint and remove a clerk without having the power to prescribe a single duty that he was bound to perform when appointed?

Surely an argument that results in such absurd conclusions must be founded upon premises that are essentially faulty and unsound. They proceed from the false proposition that the legislature has done in this case what it never did before, and has written into a statute all the details of the duties intended to govern the relations of a clerk at $1,000 a year with his chief. Nothing of the kind was intended or expressed. The statute is silent as to duties, but specific as to powers which could not otherwise be exercised, and which the justice could not confer upon his clerk.

Suppose the statute simply authorized the justice to appoint
a clerk and stopped there, how could we then know whether
the relations between them were confidential or otherwise?
Obviously, only by proof of the things which the justice had
assigned to him to take charge of, and the nature and charac-
ter of such duties. And how is this changed by the circum-
stance that the legislature from time to time conferred power
upon the clerk to do certain other things? The truth is that
the appointment of the justice makes the appointee a clerk
for him and creates all the relations that may be implied from
that word, and the statute has added to these relations certain
other powers. The powers of the clerk as an officer are to be
found in the statute. His duties to his chief as an assistant,
and as one in whom trust and confidence are reposed, must be
ascertained by an inquiry as to the facts and the actual rela-
tions created by the instructions of the chief to his subordinate
and the establishment of these relations between them by con-
sent, express or implied.

It follows that the defendant should have been permitted
to prove what the actual relations were, independent of the
statute, which did not cover all the relations which could
properly exist between the justice and his clerk. The admin-
istration of the justice of his office would have to bear the
burden of any faults or errors committed by his clerk, at least
in the public eye. When two persons engaged in the per-
formance of public duty are placed together in such close and
intimate relations it is scarcely possible to exclude the idea of
trust and confidence, and when their actual relations become
material the statute is not the sole guide. The legislature did
not make a catalogue of the numerous things that the chief
might require his clerk to do. The clerk or an applicant for
the place is not asking the court to put him in possession of
a public office to which he was never appointed, but claims that
he ought to have been. He was bound to prove every fact
upon which that right depended, and since the practical relations
that he would assume toward his chief constituted a material
inquiry the defendant was not, upon such a question, limited

to the words of the statute, but had the right to give oral proof from the justice on that subject.

According to the plaintiff's contention the situation is this: The police justice of Syracuse may appoint and have a clerk, but has no power to prescribe a single duty that he is bound to perform. The statute alone does that and the justice has nothing to do with it. The clerk may perform and do all the things nominated in the statute and yet the justice may remove him without reason and without cause. There are no personal confidential relations between the clerk and his chief, and it is absolutely impossible that there can be, since they are not enumerated in the statute, and yet when the court puts the relator in possession of the office the justice has the power to remove him the next day. The clerk prepares the papers upon which the justice issues criminal process, for the use of which the latter alone is responsible, and while the clerk may possess himself of all the secrets of the office, yet the statute will not permit anything like confidential relations to exist. It must be admitted that this is an exceptional and unique situation, and the mind naturally looks for some flaw in the reasoning process upon which it is based.

It is not difficult to find it. It proceeds from an obvious misconstruction of the purpose of the statute in assuming that it covers or was intended to cover the whole subject of duties and obligations which may exist between the head of an office and his clerk. The personal and confidential relations that must always exist in such cases do not depend upon any statute, but grow out of the nature and character of the place. When the justice makes the appointment he creates duties and relations that must exist independent of any statute, since they are inherent in the very nature and character of the employment. The clerk of the police justice of Syracuse assumes the same duties and holds the same relations to his chief that the clerk of any other judicial officer does to his chief, with certain statutory powers superadded. It will be noticed that none of the powers enumerated in the statute could be exercised by the clerk under his appointment, and

hence it was necessary to confer them by legislation, and that is what the statute intended to do and what it means.   The exercise of these special powers is perfectly consistent with the existence of those undefined personal relations that must always exist in such cases and which are to be implied from the very nature of the relation.   No one can be a clerk to a judge or judicial officer in any proper sense without a duty resting upon him to do such things as his chief may reasonably require him to do in the performance of his judicial duties.   This duty may give rise to confidential relations, and in any case when the inquiry is whether such relations attach to the appointment, the question cannot be solved by simply looking into the statute and disregarding everything else. We must look at the custom and practices of the office and find out what the clerk does and what he is required to do by his chief.

These propositions may be illustrated in many ways and by many examples.

Suppose that the relator in his application to the justice for this appointment had stated to him, in writing or otherwise, that he would refuse to do anything except the things named in the statute, would any court compel the justice under such circumstances to appoint him ?   Suppose that, being appointed, he should refuse to do anything except the things named in the statute, and should refuse to assist the justice in the performance of his duties in other respects, can there be any doubt that such refusal would be a good ground for his removal ?

It is just as erroneous to suppose that all the duties of the clerk are to be found specified and enumerated in the sections of the charter referred to as it would be to assert that all the law has been written in statutes.

The learned trial judge virtually held that the relator had made out his case and proved what all the duties of the place were by producing the statute, and that upon this vital question of the duties of the clerk the defendant could not go outside the statute, but was conclusively bound thereby since

he could not possibly have any other duties than those specified by the legislature. That no duties whatever could be implied from the relation of chief of a department and his clerk or from the nature of the employment.

This, I think, is a fundamental error that pervades the whole case. The defendant should have been permitted to give proof of the actual duties of the place as fixed by the justice himself or as established by custom and practice.

The ruling cannot be justified on any technical ground as the objection was general. In such a case, when competent evidence is excluded without any specific objection, the burden is upon the objecting party to show that it was not admissible under any circumstances or under any aspect of the case. He cannot upon appeal justify the ruling on some ground concealed at the trial and which, if disclosed, might have been answered or avoided. (*Cary* v. *White*, 59 N. Y. 336; *Mead* v. *Shea*, 92 N. Y. 127; *Cruikshank* v. *Gordon*, 118 N. Y. 178; *Valton* v. *National Fund Life Assur. Co.*, 20 N. Y. 32.)

The defendant was entitled to show the actual relations between the justice and his personal clerk, since in no other way could it be determined whether these relations were confidential or otherwise. It is now suggested that the office was not that of personal clerk to the justice, but clerk of the Police Court, the duties of which were defined and enumerated in the statute. In the court below the place in question is described as clerk to the police justice. On the argument in this court it was not asserted as matter of fact or law that the position is that of a clerk of a court. The position is not so described in the statute.

But if it be now assumed that the office created by the statute is that of clerk of the Police Court of Syracuse the plaintiff at once meets another difficulty.

Police Courts in cities are state courts. They are so designated and defined in § 3 of the Code of Civil Procedure. They are a part of the judicial system of the state in the administration of the criminal law. The fact that the justices

are elected and paid by the city does not change the character of the courts as courts of the state. The county judge is elected and paid by the county, but his court is one of the courts of the state. In fact, all the members of the judiciary except the members of this court are elected by localities or appointed by local authority, but they are parts of the judicial system of the state and their duties pertain to the government of the state. The manner of their election or appointment and the source from which their compensation comes is mere matter of legislative regulation.

The clerk of a state court is part of the court itself in the same sense that the justice is, and cannot be a city officer. He is no part of the political organization of the city, but concerned with the administration of state laws. The police justice cannot be an officer of the state or in the service of the state and the clerk of the court in the service of the city. Both are in the service of the state, engaged in the administration of the criminal law, though deriving title to their offices from local authority.

This conclusion must follow the contention that the office is that of clerk of a court. The principle does not rest entirely upon argument nor upon the statute, but upon the decisions of the courts as well.

In *McDonald* v. *Mayor* the question was whether an assistant clerk of the Marine Court was a city or local officer. It was held by the Supreme Court that the Marine Court of the city of New York was a part of the judicial department of the state government, and that its officers were not local officers of the city and county of New York, but as a part of the judicial system state officials. That was the only question in the case, and the judgment was affirmed in this court. (102 N. Y. 728.)

In *Whitmore* v. *Mayor* (67 N. Y. 21) it was held that clerks of the District Courts of the city of New York were not city officers, but officers embraced within the judiciary system of the state. The same point was decided in *Quin* v. *Mayor* (44 How. Pr. 266), affirmed in this court (53 N. Y. 627), and

in *Landon* v. *Mayor* (7 J. & S. 467), and it has been said that this cannot now be considered an open question (13 Hun, 398). The principle upon which this conclusion rests is that the judicial department, which embraces the officers of all courts, whether of general or limited jurisdiction, is a part of the general government of the state, since their functions are administered for the benefit and protection of the people at large. There may be a certain degree of locality in the organization and powers of inferior courts, but they are not for that reason dissevered from the general judicial department of the state. They are still a part of the entire judicial system, and so a part of the general government of the state. The Police Court of a city, empowered to hold Courts of Sessions and to administer the criminal law of the state, forms no part of the city government any more than does the Supreme Court when it exercises its powers and jurisdiction within the same territory. The local criminal court exercises functions which, for some purposes, at least, extend over the whole state, and hence its officers are part of the state judiciary. This principle was affirmed by the Supreme Court of the United States in a controversy touching the power of Congress to tax the salary of local judicial officers. It was held that they were part of the judicial department of the state, though elected by local suffrage or appointed by local authority, and though the salary was paid from the treasury of a city. (*Collector* v. *Day*, 11 Wallace, 113 ; *Freedman* v. *Sigel*, 10 Blatch. 327.)

All these courts, like the Police Courts in cities, are organized by the legislature under the power conferred by the Constitution to establish inferior local courts, and when created they are courts of the state, and their officers, whether judges or clerks, are in the civil service of the state and not of the city where they are located.

So that every argument to show that the office in controversy is that of clerk of the Police Court and not the personal clerk of the justice, must prove at the the same time that the place is not in the civil service of the city, but in the civil

service of the state. It is only upon the theory that the
appointee becomes the personal clerk of the justice, paid by
the city, that the place can be said to be in the civil service of
the city or within its civil service regulations.

In my opinion that is the correct theory, and, hence, evi-
dence to show the actual personal relations between the chief
and the clerk, independent of the statute, was admissible to
show whether such relations were confidential or not. But if,
on the other hand, the appointee becomes the clerk of a court
which is one of the courts of the state, with statutory powers
and duties, he stands upon the same footing as every other
clerk of a court. He must be classified as an officer holding
office under and belonging to the judicial system of the state,
and the city has no power, through civil service regulations or
otherwise, to organize one of the courts of the state or to
prescribe the manner in which its officers or clerk shall be
appointed. The mayor has power under the statute to make
rules for the civil service of the city only. The place in con-
troversy is either that of personal clerk to the police justice
or that of clerk of the Police Court. If the former, then con-
fidential relations may exist between the chief and his clerk,
depending entirely on the duties of the place as established
by the justice, or under his directions, or by consent, custom
or practice, and, hence, it was error to exclude the proof
offered with respect to the actual duties assigned to the clerk
and their nature and character, independent of the statute.
If the latter, then the place was not within the civil service
regulations of the city, since these applied only to officers of
the city, and the clerk of a state court cannot be classified as
such, but as part of the judicial system of the state and in the
civil service of the state.

The judgment should be reversed and a new trial granted,
costs to abide the event.

Haight, Martin and Vann, JJ., concur with Bartlett,
J., for modification of judgment; O'Brien, J., reads for
reversal; Andrews, Ch. J., not voting; Gray, J., absent.

Judgment acccordingly.