PEOPLE ex rel. WERNER v. PRENDERGAST, City Comptroller, et al.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

STATES (§ 46*)—OFFICERS—CIVIL SERVICE—"STATE CIVIL SERVICE."

Employés of the board of elections of the city of New York, existing under Election Law (Consol. Laws 1909, c. 17) art. 7, providing for a board of elections in every city of the first class, including within its boundaries one or more counties and in other counties, to execute the election laws within their respective cities or counties, empowering the board of aldermen of the city of New York to appoint the board for the city, and making the expenses, including salaries of the board, a charge against the city, are in the state civil service within Civil Service Law (Consol. Laws 1909, c. 7) § 2, subds. 4, 5, providing that the state civil service shall include all offices and positions in the service of the state or any of its civil divisions, except a city, and that the city service shall include such positions in the service of the city.

[Ed. Note.—For other cases, see States, Cent. Dig. § 51; Dec. Dig. § 46.*]

Scott and Dowling, JJ., dissenting.

---

Appeal from Special Term, New York County.

Mandamus by the People, on the relation of Gustav J. Werner, against William A. Prendergast, as Comptroller of the city of New York, and others, as Commissioners of the Municipal Civil Service Commission of the city of New York. From an order granting a motion for a peremptory writ, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Elliot S. Benedict, of New York City, for appellants.
Robert P. Beyer, of New York City, for respondent.

MILLER, J. The question involved in this appeal is whether the employés of the board of elections of the city of New York are subject to the jurisdiction of the state or of the municipal civil service commission. That depends on whether they are in the state or the city service within the meaning of those terms as used in section 2 of the Civil Service Law, which by subdivisions 4 and 5 provides as follows:

"(4) The 'state service' shall include all such offices and positions in the service of the state or of any of its civil divisions except a city.

"(5) The 'city service' shall include such positions in the service of any city."

Article 7 of the Election Law, being chapter 17 of the Consolidated Laws, provides for boards of elections. Section 190 thereof provides that there shall be a board of elections in every city of the first class, including within its boundaries one or more counties to consist of four persons, and in other counties of the state to consist of two or four members as the board of supervisors may determine. Each of said boards is charged "with the duty of executing laws relating to all elections held within their respective cities or counties, except as otherwise provided by law." The board in the city of New York is appointed by the board of aldermen, and each member must be a resident and an elector of the political subdivision from which he is appointed. The expenses, including salaries, of the members of the board of the city of New York, are made a charge against the city, and in counties it is made a charge against the county, to be apportioned, if the board of supervisors so direct, between the county and any city or cities within the county.

It may be conceded at the outset that the commissioners or boards of elections are limited in the execution of their official functions to a portion only of the state, and are therefore local officers within the meaning of section 2 of the Public Officers Law (Consol. Laws 1909, c. 47). But, though classified by an arbitrary definition as local officers, it does not necessarily follow that they are engaged in the service of the city. Indeed, construing those words solely with reference to the functions performed, it is plain that they are not in the service of the city. They are charged with the duty of executing laws, relating to elections within a particular territory, but, while thus territorially limited, the function discharged within the said territorial

limits is purely a state function. Each county in the state, except as regards purely local elections, is equally interested with every other county in the manner in which the election laws are executed in each county. The service, then, tested by the nature of the functions discharged, is a state service. Election boards are appointed pursuant to a general law as a part of a comprehensive scheme involving the entire state to execute a general law affecting the entire state. Tested, however, by the method of appointment and the payment of salary, they are in the service of the city, and the question is what test is to govern.

It has been held that the clerk of a police justice of a city is in the civil service of the city. People ex rel. Sears v. Tobey, 8 App. Div. 468, 40 N. Y. Supp. 577; Id., 153 N. Y. 381, 47 N. E. 800. The test stated by Mr. Justice Follett, writing in that case for the Appellate Division, seems to have been approved by the Court of Appeals. He said:

"The intent of the Constitution and of the statutes, clearly expressed, it seems to me, is that persons appointed and serving under general laws relating to the government of the state, and who are paid out of the funds of the state, through the comptroller, are 'in the civil service of the state,' and that persons appointed under local statutes providing for the government of a civil division of the state—a city—and who are paid out of the funds of the city, are in the civil service of the city in which they serve."

One of the tests specified—i. e., the appointment and service under general laws relating to the government of the state—would classify the relator in the state service. The other test—i. e., the payment of salary—would classify him in the city service. In People ex rel. Bush v. Houghton, 182 N. Y. 301, 74 N. E. 830, it was decided that local boards of health were city officers within the meaning of section 2, art. 10, of the state Constitution. Judge Gray in that case said:

"I think that the question does not turn so much upon whether the officers are the servants, or agents, of the city, as upon whether their offices were created for the city, unconnected with any other territory."

I think, therefore, that no single test can be prescribed and no general rule laid down. Neither the payment of salary nor the method of appointment nor the nature of the duty discharged can alone determine the question. Police officers, local boards of health, departments of charities, and other boards and officers might be named, who are unquestionably discharging state or governmental functions, but who would nevertheless within the meaning of the statute be regarded, not only as local officers, but as engaged in city service. Municipal corporations discharge a double function, one private or corporate, the other public or governmental, and, in so far as the state delegates to municipalities the discharge of governmental functions immediately affecting the locality, the officers selected to discharge those functions may well be treated as in the municipal or city service. The appointment of such local officers is usually provided for by special or local acts, and, though the state at large may have a remote interest in the execution of their duties, the municipality alone is directly and immediately concerned. In this case, the board of elections of the city of

New York is provided for by a general law, which created a system for the enforcement of the election law relating to the entire state. Instead of providing for the appointment of such boards by a state officer, as might well have been done, the matter was delegated to the board of aldermen of the city of New York, and the boards of supervisors of the counties of the state, not included within a city. Instead of providing for the payment of salaries and expenses out of the state treasury, the salaries and expenses of each board are made a charge upon the city or the county as the case may be. Instead of having one board for the entire state with subordinates in different subdivisions of the state, separate boards were provided for in the different subdivisions, but the duties performed, while local in the sense that each board acts within certain territorial limits, are state wide in their effect. The service then is a state service, and we think that the state civil service commission was right in classifying the positions as in the state service. Had the board of elections been created pursuant to a local act, relating to the city of New York, for the discharge of duties of immediate concern only to the city, in which the state at large was only remotely interested, a different question would be presented.

The order should be affirmed, with $10 costs and disbursements.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

SCOTT, J. (dissenting). I am of opinion that the relator, an employé of the local board of elections, specially created for the city of New York, and, having no function or authority which can be exercised outside of the limits of that city, is a local city officer and subject to the jurisdiction of the municipal civil service commission.

The members of the board of elections are appointed by local authorities, their duties are purely local, and they are paid out of the city treasury. By every known test whether to be found in a statute, or in judicial utterances, they are local officers in the city service. That the people of the whole state are interested in their performance of duty, or that their performance of that duty is in a sense the performance of a state service or function, does not serve to classify them as state officers in the state service. If that was the test, health officers and police officers, among others, would be included among state officers in the service of the state. It is settled that they are not to be so classified.

I do not question that the Legislature might have so framed the Election Law as to include election officers in the city of New York among state officers, but in my opinion it has not done so.

I am therefore in favor of a reversal of the order appealed from and a dismissal of the writ.

DOWLING, J., concurs.