(89 App. Div. 171.)

PEOPLE ex rel. KENNY v. FOLKS, Com'r of Public Charities.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. MOTION FOR JUDGMENT—SPECIFYING GROUNDS.

Defendant, having at the close of the evidence moved for judgment without specifying that relator's evidence was insufficient to show he was a veteran volunteer fireman, may not afterwards claim such insufficiency.

2. CIVIL SERVICE LAW—VETERAN VOLUNTEER FIREMAN.

A member of an incorporated fire company, which is not officially connected with a municipality, but the object of which is to render public service in the extinguishment of fires, is within Civil Service Law (Laws 1899, p. 809, c. 370, as amended by Laws 1902, p. 805, c. 270) § 21, providing that no person holding a municipal position or employment who shall have served the term required by law in the volunteer fire department of a city, town, or village shall be removed, except for cause, after a hearing.

3. SAME—EQUAL PROTECTION OF LAWS.

Civil Service Law (Laws 1899, p. 809, c. 370, as amended by Laws 1902, p. 805, c. 270) § 21, in providing for removal from a position of one who is a veteran volunteer fireman only after a hearing, which is not necessary in the case of one not a veteran, does not contravene Const. U. S. Amend. 14, prohibiting the denial of the equal protection of the laws.

Appeal from Special Term, Kings County.

Mandamus, on the relation of Thomas Kenny, Sr., against Homer Folks, commissioner of public charities of the city of New York. From a final order granting a peremptory writ after trial of issues raised by the return to an alternative writ, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

James McKeen (Walter S. Brewster, on the brief), for appellant. Warren C. Van Slyke, for respondent.

GOODRICH, P. J. The findings of fact are supported by evidence, and, briefly stated, are as follows: The relator, Kenny, is a veteran volunteer fireman, having served more than the time required by law, viz., from January, 1872, to December, 1881, in the Cataract Engine Company, No. 2, of the North Shore Fire Department of the County of Richmond, which was a volunteer fire com-

pany in said county.  Kenny was appointed superintendent of outdoor poor for the borough of Richmond in 1898, and held that office and fulfilled its duties continuously from that date until March 31, 1902, when he was summarily removed by Mr. Folks, commissioner of public charities of the city of New York, without a hearing upon notice or charges, and without being served with or receiving any charges of incompetence or misconduct.  No charges of any kind were ever preferred against him.  On April 11, 1902, he served on the commissioner formal notice protesting against his removal, but he has not been reinstated.  The office or position held by Kenny was not that of a private secretary, cashier, or deputy of any official department, and Kenny did not occupy a position involving a strictly confidential relationship between the commissioner and himself.  The office has never been abolished, and still exists.  At the time Kenny was removed there was a vacancy in the department which he was qualified to fill, viz., the position of deputy superintendent of outdoor poor for the borough of Richmond, which on April 1, 1902, was filled by the appointment of one Seehusen.  The office of superintendent remained vacant till May 10, 1902, when the office of deputy was abolished, and Seehusen was appointed superintendent of outdoor poor for the borough of Richmond.  The duties performed by Seehusen from April 1st to May 10th as deputy, and since May 10th as superintendent, are similar in kind and character to, and substantially the same as, those performed by Kenny as superintendent prior to his removal.  The court granted a peremptory writ of mandamus, commanding the commissioner to reinstate and re-employ Kenny in the office of superintendent of outdoor poor in the borough of Richmond at his former salary.  From this order the commissioner appeals.

The appellant contends that the finding that Kenny was a veteran volunteer fireman was not warranted by the evidence.  We think otherwise.  In the second paragraph of the petition it is alleged that Kenny was a veteran volunteer fireman, and, while the return denied the allegation of the second paragraph, such denial was coupled with the allegation that no notice of such claim was made by Kenny until after his removal.  At the trial, Kenny was asked, "Were you a member of the Cataract Engine Company, No. 2?"  A simple objection was made, without specifying any grounds; and afterwards the act of the Legislature incorporating the Cataract Company was offered and received in evidence without objection, and Kenny testified, also without objection, that he joined the company as an active member in 1871, and served as such until 1882, and thereafter continued to serve as a privileged member, and that he was foreman in 1874.  It seems, from the course of the hearing, to have been assumed that Kenny was a veteran volunteer fireman.  The commissioner's counsel, at the conclusion of the relator's evidence, moved for a decision in his favor upon the issues raised by the return, and at the close of the whole evidence moved for judgment and a finding that the issues of fact were as stated by the commissioner in his return to the alternative writ.  It is now too late to contend that there is a failure of proof in this respect, inasmuch as the motion did not specify the

point now raised as one of the grounds of the motion. It was said in Gerding v. Haskin, 141 N. Y. 514, 520, 36 N. E. 601, 603:

"A motion to direct a verdict for the defendant is in substance a motion for a nonsuit, and must be governed by the same rules. It is undoubtedly the general rule that a motion for a nonsuit is ineffectual unless the grounds upon which it is based are specified. The defect in the plaintiff's case should be pointed out, so that he may supply it if he can. [Citing cases.] So much is required by good faith and fair practice, and so much is due to the orderly administration of justice."

It may be assumed that the relator could have given other evidence, if it had been necessary (which is not at all certain), in view of his testimony that he was a member of an incorporated fire company for the time required by law.

Neither is it necessary that the veteran should be a member of a fire department officially connected with a municipality. It is sufficient if he was a member of an incorporated fire company, the object of which was to render the public service in the extinguishment of fires. That is the public service to which the statute has relation. In other statutes the distinction is recognized, without making a difference by reason thereof—notably, in section 1030, subd. 13, of the Code of Civil Procedure, which exempts from jury duty in the several counties of the state, other than the counties of New York and Kings, "a member of a fire company, or fire department, duly organized according to the laws of the state, * * * who, after faithfully serving five successive years in such a fire company, or fire department, has been honorably discharged therefrom." Similar language is used in section 1081 in relation to jurors in the county of New York, and in section 1127 in relation to jurors in the county of Kings.

This seems to be decisive of the question whether Kenny is a veteran volunteer fireman, within the meaning of section 21 of the civil service law (chapter 370, p. 809, Laws 1899, as amended by chapter 270, p. 805, Laws 1902), which provides that no person holding a position by appointment or employment in the cities, counties, towns, or villages of the state, "who shall have served the term required by law in the volunteer fire department of any city, town or village in the state, * * * shall be removed from such position or employment except for incompetency or misconduct shown after a hearing upon due notice, upon stated charges and with the right to such employé or appointee to review by a writ of certiorari."

We hold that Kenny was a veteran volunteer fireman, having served the time required by law in a "volunteer fire department" of a town or village in this state, and, being such, could be removed from his position only for incompetency or misconduct, after a hearing upon notice and stated charges.

The commissioner also contends that the relator was a deputy, and so not entitled, within the provision of section 21 of the state civil service law, to notice and hearing. The court has found, upon sufficient evidence, that he was not a deputy, within the meaning of section 21 of chapter 370, p. 809, of the Laws of 1899, as amended by chapter 270, p. 805, Laws 1902, which provides that the veteran ex-

emption clause does not apply, among others, to a "deputy of any official or department." With this finding we fully concur.

The learned corporation counsel earnestly urges that section 21 is unconstitutional and void because it violates the fourteenth amendment of the Constitution of the United States, which provides that "no state shall deny to any person within its jurisdiction the equal protection of the laws." His argument is that where two men occupy exactly similar positions in the same department of the municipal service, and are accused of the same offense, one, if a veteran volunteer fireman, can be discharged only after a trial, in which the burden of proof is on his accuser, and he can have the decision reviewed on certiorari, while the other, if not a veteran, can be discharged without trial, and in such a case cannot have the decision against him reviewed. This, he contends, is not "equal protection of the laws."

The first veteran law was passed in 1884 (chapter 312, p. 377, Laws 1884). That act has been amended in various respects, and its substance incorporated in other statutes—among them, the Greater New York charter. For nearly 20 years its underlying principle has stood practically unchallenged. The constitution of 1894 adopts the principle so far as it relates to appointment and promotion of veterans, but is silent as to removals. We may assume that the constitutional convention adopted this provision of the Constitution with reference to the existing law as to removals, which the Legislature had plenary power to pass, unless restricted by constitutional limitation. The learned corporation counsel admitted on the argument that he had been unable to find any authority exactly in point. Neither has any member of this court. It may be observed that the main purpose of the fourteenth amendment was the protection of negroes against invidious distinctions as to their legal rights. While it has not such a restricted sense as matter of law, it would be a long stretch of interpretation to extend it to the protection of persons in holding state offices. It cannot be affirmed that any person has a right to be appointed to a nonelective municipal office. If the municipality confers such an office upon an individual, he cannot be said to have a property right therein until a definite term of tenure has been affixed thereto. At the most, it is only a privilege; and as to privileges of citizens we have the definite utterance of the Supreme Court of the United States in Presser v. Illinois, 116 U. S. 252, 266, 6 Sup. Ct. 580, 585, 29 L. Ed. 615, where it was held that "A state may pass laws to regulate the privileges and immunities of its own citizens, provided that in so doing it does not abridge their privileges and immunities as citizens of the United States." We cannot see why the veteran sections of the Constitution and of the civil service law are not precisely and completely within the language and spirit of this opinion of the United States Supreme Court. It follows that the order should be affirmed.

Final order affirmed, with costs. All concur.

WOODWARD, J. (concurring). I have no hesitation in concurring in the result reached by the learned Presiding Justice, and generally with the reasons which appear in his opinion, but upon the consti-

tutional question urged I prefer to place my concurrence upon slightly different grounds.

In the first place, I do not understand that the appellant is in a position to raise the question of the "equal protection of the laws." The appellant, Homer Folks, is the commissioner of public charities of the city of New York. He holds his office and exercises its duties under the provisions of the Greater New York charter, and no rights or interests of his are involved in the discrimination between veterans and others. If some one in his employ, other than a veteran, should be removed from office without the hearing provided for in the case of veterans, such person might question whether he was given that equal protection of the law which the Constitution requires; but the appellant is not in a position to raise this question, for there is no question of equality in which he is interested. The statute provides that he cannot remove a veteran without a hearing, and the Legislature very clearly has a right to limit the powers of the officers of its own creation; and they cannot challenge this power because, as between the relator and some unknown and disinterested person, there is a discrimination in the law. The Legislature might have provided that no one should be removed without a hearing, and the appellant would have accepted his position subject to this limitation on his powers; and this situation is not changed because the Legislature has seen fit to limit his powers only as to veterans. He takes the office under the conditions prescribed by the law. He is not denied the equal protection of the law. He has the rights conferred upon him by law, and no others; and the fact that the law, as between others, may not be equal, cannot give him the right to discharge without a hearing those whom the law declares must be given a hearing. In other words, the appellant has no legal interest in whether the law is equal in its protection to those who are employed through his agency. He has a right to the office and its emoluments, but he has no legal interest in the relative rights of his subordinates; and, when the law declares that he cannot remove any one belonging to a certain class without a hearing, that constitutes a limitation upon his powers, just as much as any other provision which limited or regulated his powers. The fact that the act might be unconstitutional as between his subordinates would not enlarge his powers, and permit him to discharge without a hearing.

In the case now before us the Legislature has extended a privilege to a certain class of citizens. It has limited the common-law right of the appointing officer to remove his appointee, and the officer who accepts public employment under the laws of this state cannot disregard this limitation upon his powers because the Legislature has not seen fit to extend this privilege to all persons equally. The law is controlling upon the relator, whatever rights individuals discriminated against by such legislation might have in the premises. The provisions of section 21 of chapter 370, p. 809, of the Laws of 1899, as amended by chapter 270, p. 805, of the Laws of 1902, apply equally to every appointing power in the state; the appellant has the equal protection of the law in the discharge of the duties of the office which he holds, and if there is any defect in the statute, under the fourteenth amendment, it is not one which affects the rights of the appellant. The Con-

stitution does not place any limitations upon the granting of privileges to persons occupying public offices or public employments, and the Legislature clearly had the power to determine that no one should be removed without a hearing upon specific charges. It has extended' this privilege of permanency in public employment to veterans of the army and navy and of fire departments, and this is the standard of privileges which the state has established, and which is controlling upon the appellant. If there are others who are not given this privilege, and who are deprived of their positions without an equal opportunity of being heard, they may be in a position to complain that they have been denied the equal protection of the law; but neither the appellant nor the relator has any such relation to this proceeding, and therefore, as to them, there is no constitutional question involved. "Nor," says Judge Cooley in his Constitutional Limitations (6th Ed., p. 196), "will a court listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it." See People v. Brooklyn, F. & C. I. R. Co., 89 N. Y. 75, 93, and authorities there cited.

Upon the merits, however, I am of the opinion that the provisions of section 20 of chapter 370, p. 808, of the Laws of 1899, as amended by chapter 270, p. 804, of the Laws of 1902, are not open to the objection that they do not afford the equal protection of the laws, as that clause is understood in constitutional law. This provision of the fourteenth amendment was intended to guaranty, not that every person should have exactly the same privileges as every other person, regardless of differences in conditions, and independent of proper and reasonable classifications, but that every person within the jurisdiction of the state should be given the same rights and privileges under the same circumstances and conditions. It was the same guaranty, in effect, as that found in the first section of the first article of our state Constitution, which provides that "no member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." This clause, "the law of the land," is defined by Judge Catron (afterward Mr. Justice Catron of the United States Supreme Court) in Vanzant v. Waddel, 2 Yerg. 260, to mean "a general and public law, equally binding upon every member of the community. * * * The right to life, liberty, and property of every individual must stand or fall by the same rule of law that governs every other member of the body politic or 'land' under similar circumstances." See Gulf, Colorado & Santa Fé Ry. v. Ellis, 165 U. S. 150, 156, 17 Sup. Ct. 255, 41 L. Ed. 666; Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 105, 22 Sup. Ct. 30, 46 L. Ed. 92. And the same idea finds concise expression in Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 Sup. Ct. 1064, 1070, 30 L. Ed. 220, where, in speaking of the clause of the fourteenth amendment which guaranties the equal protection of the law, it is said:

"These provisions are universal in their application to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws."

And the requirement of the Constitution is met when the act of the Legislature deals with all persons of a particular class (where that classification is based upon some reasonable foundation) upon equal terms. Mere arbitrary selection cannot be justified as classification, but where there is a reasonable distinction—some distinct line of demarcation—between classes of citizens, the Legislature has a right to recognize such classification, and to make different rules with respect to such classes, so long as in so doing it does not transgress those fundamental rights of life, liberty, and the pursuit of happiness. People v. Orange County Road Cons. Co., 175 N. Y. 84, 89, 67 N. E. 129, and authorities there cited. See, also, Yick Wo v. Hopkins, supra (page 370, 118 U. S., 6 Sup. Ct. 1064, 30 L. Ed. 220), where the distinction between mere political rights and the fundamental rights of the citizen are pointed out.

Is the classification provided for in section 21 of the act of 1902 arbitrary or unreasonable? It finds two men in public employment, one of whom has served the state as a member of a fire department within some of its municipal corporations for a period of five years, or has served the nation in its army or navy. He has performed services for which the state might pension him, for which it might properly exempt him from jury duty or from other civic obligations, and no good reason suggests itself why the state might not extend to him the privilege of remaining in public employment under a better tenure of office than that which is secured to the other man, who has rendered the state no special service. The classification is not arbitrary. It is based upon actual service to the state, which the state had the right to compensate in the first instance, or to reward by pension after it had been performed. Why, then, may not the state, in determining who shall receive the compensation of its public places, make discrimination in favor of those who have rendered special service? In considering a similar question presented to the Supreme Judicial Court of Massachusetts (Opinion of Justices, 166 Mass. 589, 595, 44 N. E. 625, 626, 34 L. R. A. 58), the majority of the judges say:

"The General Court may have been of opinion that a person who had served in the army or navy of the United States in the time of the War of the Rebellion, and had been honorably discharged therefrom, or who was a citizen of Massachusetts, and had distinguished himself by valiant and heroic conduct in the army or navy of the United States, and had received a medal of honor from the President of the United States, is a person who has shown such qualities of character that it is for the interests of the commonwealth to appoint him to certain offices or employments in preference to other male persons, if he is found otherwise qualified to perform the duties. The General Court may have so thought on the ground either that such a person would be likely to possess courage, constancy, habits of obedience, and fidelity, which are valuable qualifications for any public office or employment, or that the recognition of the services of veterans in the way provided for by the statute would promote that love of country and devotion to the welfare of the state which it concerns the commonwealth to foster. If such was the opinion of the General Court, we cannot say that it was beyond its constitutional power to enact this section."

This reasoning is sufficient to show that the classification of veterans is not arbitrary, and that their preferment may be justified upon considerations of public policy; and it cannot be said that a person who has rendered no special service to the state is denied the

equal protection of the law because he is not put upon the same footing in respect to a political regulation with one who has made sacrifices of time, health, energies, and opportunities in the service of the state. Political employment is not of the essence of civil rights; its grant or denial does not go to the right of life, liberty or property; and no man's constitutional rights can be said to have been invaded because he is put into a different class from that of his fellows, and especially where the classification is based upon substantial services to the state. If the discrimination was against the civil rights of the relator—if the Legislature should undertake to prescribe conditions for the enjoyment of life, liberty, or property which should unequally affect the rights of veterans and others—there would be reason for challenging the action of the Legislature; but in the mere matter of political employment it is clear, both upon reason and authority, that there is no ground for complaint in the classification which the Legislature has made in the statute now under consideration.

There is a clear distinction between the case at bar and that class of cases where the Legislature has attempted to deprive persons of their remedy against municipal corporations by requiring conditions precedent which were practically impossible of fulfillment. In those cases the fundamental rights of the individual are at stake. The cause of action growing out of the invasion of the plaintiff's constitutional right to life (Bertholf v. O'Reilly, 74 N. Y. 509, 515, 30 Am. Rep. 323) is property, and this can be taken from him only by due process of law (Dyett v. Hyman, 129 N. Y. 351, 357, 29 N. E. 261, 26 Am. St. Rep. 533). "Due process of law is process due according to the law of the land" (Walker v. Sauvinet, 92 U. S. 90, 93, 23 L. Ed. 678), which requires that the party wronged must have a reasonable opportunity to have his rights judicially determined (Cooley's Constitutional Limitations [6th Ed.] 442). In these municipal cases there is no classification. There is an arbitrary selection of particular cities, and it is provided that, where the cause of action accrues in such city, it must be regulated by an arbitrary rule which does not apply to citizens similarly situated in other portions of the state; while in the case now before us the law is uniform throughout the state, the classification is based upon a reasonable foundation, and no fundamental right of any one is involved in the proceeding.

Nor does this conclusion conflict with that reached in the case of Grossman v. Caminez, 79 App. Div. 15, 79 N. Y. Supp. 900, and of Cody v. Dempsey, 86 App. Div. 335, 83 N. Y. Supp. 899. The classification of cities for the purpose of depriving persons of their fundamental rights can find no justification in any of the adjudicated cases. While it is true, of course, that a thing which might be harmless if done upon a remote country highway would become a nuisance in the streets of New York, and it is competent for the Legislature to make acts criminal in one portion of the state which would not be criminal in another, this power only extends to the legitimate exercise of the police power, and not to prescribing conditions for the transaction of business, where there is no legitimate basis for the classification. For instance, if the statute of frauds should be limited in its

operation to the cities of the first and second class, what possible justification could there be for such a discrimination between the rights and privileges of the people of this state? Fraud is not confined to localities. It is liable to manifest itself in all portions of the state, and the limitations should be made to reach all of the people or none. Every man making a contract in any occupation or employment should stand upon an equal footing with every other man. That is the essential element of the law of the land, and that equal protection of the law which is required by the fourteenth amendment. The laws which reach and affect fundamental rights should be uniform in their operation upon persons in the same general circumstances. They should not be applied by means of any arbitrary classifications to localities, but to persons surrounded by the same circumstances throughout the state. See Bank v. Cooper, 2 Yerg. 599, 24 Am. Dec. 517, and cases heretofore cited on the law of the land.

For the reasons above stated, I concur in the conclusion reached by the Presiding Justice, that the order appealed from should be affirmed.