PEOPLE ex rel. CONLEY v. BEACH et al., Board of Fire and Police Com'rs of City of Rome.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1911.)

MUNICIPAL CORPORATIONS (§ 218*)—EMPLOYÉS—TENURE—REMOVAL.

Civil Service Law (Consol. Laws, c. 7) § 22, as amended by Laws 1910, c. 264, prohibiting the removal from a position in any municipality of one who has served the term required by law in a volunteer fire department, except for incompetency or misconduct, after hearing on notice, protects only those who have belonged to a volunteer fire department organized under the laws of the state, and one who joined a volunteer fire company after the act of 1881, which repealed the act incorporating such fire companies, cannot claim the protection of the above act to prevent his discharge, though the city authorities gave the members of the volunteer fire company certificates showing their time of service.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 593; Dec. Dig. § 218.*]

Spring and Kruse, JJ., dissenting.

Appeal from Special Term, Oneida County.

Mandamus by the People, on the relation of Warner L. Conley, against Samuel H. Beach and others, as the Board of Fire and Police Commissioners of the City of Rome. From an order denying a peremptory writ of mandamus, the relator appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

M. H. & W. J. Powers, for appellant.

M. J. Larkin, for respondents.

WILLIAMS, J. The order should be affirmed with costs.

From July 9, 1896, to February 5, 1910, the relator was a police and patrol man of the city of Rome. On the latter day he was discharged from said office by the defendants, upon charges of violation of rules, misconduct while on duty, and conduct unbecoming a police officer. There was no hearing upon the charges, upon notice to the relator. The court below has held the discharge legal and has denied the writ. The relator claimed he could not be removed without such hearing upon notice to him by reason of the provisions of section 22 of the civil service law (chapter 15, Laws 1909 [Consol. Laws, c. 7], as amended by chapter 264, Laws of 1910) because he had served the term required by law in the volunteer fire department of the city of Rome. The court below has held that the fire company in which relator served was never a volunteer fire company organized under the laws of the state of New York, and therefore was not within the provisions of section 22 of the civil service law. And this is the only question involved in this case. The judge in his memorandum said:

"The protection extended by this statute (section 22, Civil Service Law) to volunteer firemen is confined to those who have belonged to a volunteer fire department or company organized under the laws of the state, not to those who have associated themselves together informally, without any responsibility to the state, or its municipalities, and over whom the state had no au-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

thority or control"—citing People ex rel. Kenny v. Folks, 89 App. Div. 171, 85 N. Y. Supp. 1100; People ex rel. Storey v. Butler, 124 App. Div. 148, 108 N. Y. Supp. 848.

In the Kenny Case, above, it was held it was not necessary that a fireman, claiming the protection of the civil service law, should be a member of the fire department officially connected with the municipality, but was sufficient if he was a member of an incorporated fire company. The Cataract Engine Co. No. 2 of the North Shore Fire Department of the County of Richmond, of which he was a member, was incorporated by an act of the Legislature. The court said that being a member of an incorporated fire company and serving therein was the public service to which the statute had relation, and referred to section 1030, Code of Civil Procedure, making exemption from jury service dependent upon the person being a member of a fire company or department duly organized according to the laws of the state, and to similar provisions of statute relating to the counties of New York and Kings; and we know there are similar provisions as to exemption of the property of firemen from assessment and taxation. There did not seem to be any contention; but it was necessary the company should be incorporated, organized under the statute. The real controversy was as to the sufficiency of the proof of service by the relator in such a company.

In the Storey Case, above, relator claimed to have served in the Richmond Hook & Ladder Company No. 4 at New Brighton, Staten Island. He attempted to prove this by a certain certificate filed in the Richmond county clerk's office, and refused to answer any questions with reference to the matter. He was refused a trial under the civil service law, on the ground that the commissioner of the tenement house department was not satisfied from the certificate alone that he was entitled to a trial under such law. The court on review sustained the commissioner, and among other things said that there was no evidence that this hook and ladder company had been legally organized, or that the persons who had signed the certificate were officers of any legally organized company; that the commissioner was entitled to know whether the company had a legal existence, and that the persons signing the certificate held the official positions claimed by them. Here again there seemed to be no controversy as to the necessity of the company being incorporated or legally organized. The only question was as to the value of the certificate as evidence thereof and of service by the relator therein so as to entitle him to the protection of the civil service law. While these cases cannot be considered as deciding directly the question before us, still they are decisions by the First and Second Departments, Appellate Division, and the opinions of the judges are entitled to consideration. We are referred to no other decision upon the question. We think the court below was correct in its suggestion that this civil service provision was not designed by the Legislature for the protection of persons who have merely associated themselves together informally, without any responsibility to the state, or its municipalities, and over whom the state has no authority or control. The company here involved, the Fort Stanwix

Hose Co. No. 2, was not an incorporated company or one organized under the laws of the state, when the relator joined it in November, 1883, or while he served therein until April or May, 1892, about 8½ years.

In 1855 an act (Laws 1855, c. 388) was passed incorporating a fire department in the village of Rome, and I suppose this company was originally organized under that act and the amendments thereof; but in 1881 an act was passed (Laws 1881, c. 517), by section 13 of which the act of 1855 and all its amendments were repealed, and by section 16 of which all acts and city ordinances and other provisions of law in conflict with it were repealed. The act of 1881 established a board of fire commissioners of the city of Rome, and provided for the organization of a paid fire department, and the control thereof. In 1890 an act was passed (Laws 1890, c. 428) changing the designation of this board to the board of fire and police commissioners of the city of Rome and providing this board should have control of the police as well as the fire department. In neither of these acts was reference made to volunteer fire companies or volunteer firemen. The department from 1883 down to 1892 was a paid one and that alone. No power was given under the act of 1881 or 1890 to organize or authorize fire companies other than the paid companies provided for therein. An act was passed in 1873 (Laws 1873, c. 397) authorizing the incorporation of fire hose and hook and ladder companies; but a certificate had to be made and filed, approved by the mayor of the city in which it was to be located, and, when so incorporated, such companies were subject to the control of the local authorities, when participating in the prevention or extinguishment of fires. No claim is made that the company in question was ever incorporated under this act. It was conceded the company was not incorporated in any way. The company merely organized itself, and the members acted in putting out fires, and the city furnished them some coats and hats, at least; but they were not paid anything for their services at fires. The board issued certificates to some of these men, discharging them from service after five years' service; but there was no statutory authority for the issue of such certificates. The city of Rome was incorporated in 1870 (Laws 1870, c. 25), and whatever provisions that charter contained as to a fire department or firemen were, however, repealed by the act of 1881, which established a paid fire department. All concur, except SPRING and KRUSE, JJ., who dissent.

KRUSE, J. (dissenting). I think the relator is entitled to the protection afforded by section 22 of the civil service law, against summary removal from municipal service, without stated charges and an opportunity to be heard.

The fire company in which he served the time required by law was not, as it seems to me, an irresponsible association or organization without responsibility to the city. The relator as well as his company was under the control of the fire department officers, and that authority was recognized by the relator and his company; and I think

the authority and control which the fire department officers assumed was within their power.

Up to 1881, the fire department of the city seems to have consisted exclusively of volunteer firemen, who served without pay, among others the, company to which the relator belonged. Chapter 517 of the Laws of 1881 provided for the appointment of a board of fire commissioners. It required the board to organize fire companies to appoint firemen thereto and pay them reasonable compensation, the number to be appointed and paid not to exceed 25; but the board might authorize the chief engineer in cases of emergency to appoint additional firemen. The board of fire commissioners organized a paid fire department, but the volunteer fire companies do not seem to have been disbanded. They continued to act with the paid fire department, attending fires and performing the duties of firemen under the orders of the chief engineer and officers of the fire department and the general control of the board. The board not only purchased uniforms and other articles for the use of the relator's company, but recognized him as an active member, and upon the certificate of the foreman and secretary of his company, confirmed by the chief engineer of the fire department, granted him a certificate of honorable discharge after five years' service as a member of the fire department.

I do not think it necessary that the relator's company should have been organized as a corporation to entitle him to the protection of the provisions of the civil service law, to which attention has been called; nor that he should have received compensation for the services which he rendered as a fireman. Practically he was a member of the city fire department; a volunteer serving without pay; faithfully served his time; was so recognized by the city officers; and I think they should not now be heard to say that he is not entitled to the advantages and protection which the law gives to honorably discharged volunteer firemen.

The point is made that, if the relator has any legal grievance, he has mistaken his remedy. I think not. In a case like this, where no hearing at all was had, mandamus, I think, is the proper remedy.

I think the peremptory writ should have been granted.