Matter of the Application of ARTHUR B. CHRISTEY for a Writ of Mandamus to JOHN F. COCHRANE, as Comptroller of the City of Buffalo.

(Supreme Court, Erie Special Term, February, 1914.)

Civil service — law against removal of veterans except for incompetency or misconduct — Civil Service Law, § 9, as to appointments in classified service.

The provision of section 22 of the Civil Service Law against the removal, except for incompetency or misconduct duly shown, of any honorably discharged veteran of the Spanish-American War, etc., holding a position by appointment or employment in any city, except that of private secretary, cashier or deputy of any official or department, applies only to subordinate positions and not to heads of departments or independent officials in the state or municipal governments.

The Civil Service Law being general in its application, except as to the three specified exceptions mentioned therein, others must be excluded from its operation under the maxim "The expression of one thing is the exclusion of another."

Statutes giving preference and protection to veterans in public positions will be liberally construed in their favor, and exceptions made by the statutes are not to be extended.

The position of auditor of the city of Buffalo, who under the city charter is one of the subordinate employees in the office of the comptroller, is a subordinate position within the meaning of section 22 of the Civil Service Law made applicable by section 58 of the city charter, and one holding such position who is a veteran of the Spanish-American War is protected from summary removal except as specially provided.

The provision of section 9 of the Civil Service Law that all appointments or employments in the classified civil service, except those of veterans of the Civil War, shall be for a probationary term, held not to apply to the case at bar as the incumbent of the position of auditor is in the exempt class.

APPLICATION for a peremptory writ of mandamus.

Simon Fleischmann, for applicant.

William S. Rann, corporation counsel, for respondent.

MARCUS, J. This proceeding is instituted by Capt. Arthur B. Christey to secure a peremptory writ of mandamus compelling the respondent, John F. Cochrane, as comptroller of the city of Buffalo, to reinstate him in the position of auditor of said city. Capt. Christey claims that he could not be removed from said position, except upon charges of incompetency, for which, it is conceded, no grounds exist, because he is a veteran of the Spanish American War and also of the subsequent incidental insurrection in the Philippine Islands.

The moving papers and answering affidavits present no issue of fact, as the facts set forth in the moving affidavit are not denied and the facts and conclusions of law set forth in the answering affidavit raise no material issue of fact calling for determination. *Peo-*

ple ex rel. *Empire City Troting Club* v. *State Racing Com.*, 190 N. Y. 31; *People ex rel. Cohen* v. *Butler*, 125 App. Div. 384, 386; *People ex rel. Ajas* v. *Department of Health*, 138 id. 559, 560; *Matter of Rebbecchi*, 51 Misc. Rep. 403.

It appears that the former auditor, Anselm J. Smith, who had served as such continuously since 1886, died December 27, 1913; that Capt. Christey was appointed to fill the vacancy on December 29, 1913, by William G. Justice, who was then comptroller; that Capt. Christey's appointment was confirmed by both houses of the common council, as required by the charter, on December 31, 1913; and that he immediately entered upon the discharge of the duties of the position. On January 1, 1914, a new comptroller, John F. Cochrane, the respondent, took office; and on January 15, 1914, Mr. Cochrane notified Capt. Christey that he had removed him as auditor. On January 12, 1914, Mr. Cochrane appointed the respondent, Joseph F. Gleason, auditor and his appointment was confirmed by the common council on January 14, 1914, whereupon Mr. Gleason took possession of the office.

There are certain political phases connected with this controversy that obviously cannot be considered or taken note of by the court, which is to be guided in the determination of this question solely by the law applicable thereto as interpreted by the courts.

The sole and important question of law presented is, whether the position of auditor is one of such importance or independence, by reason of the duties attaching to it, as to deprive an incumbent who is a veteran of the Spanish War of the protection against removal, without charges, accorded by the Civil Service Law.

Section 22 of the Civil Service Law provides that an honorably discharged soldier who has served in the volunteer army during the Spanish War or the subse-

quent Philippine insurrection, and who holds a position by appointment or employment in any city, shall not be removed from such position, except for incompetency or misconduct shown, after a hearing upon due notice on stated charges, but that such protection shall not apply to the position of private secretary, cashier or deputy of any official or department.

It is clear that the position of auditor does not fall within any of the specified exceptions of private secretary, cashier or deputy. Upon the face of the statute and its stated exceptions, the applicant would thus be entitled to protection against summary removal.

The courts, however, when the veteran acts first came up for consideration added another somewhat comprehensive group of implied exceptions to those specified, by holding that the protection against removal should be applied only to what might fairly be regarded as subordinate positions in the public service, or, in other words, that it should not be applied to heads of departments or independent officials in the state or municipal governments. *People ex rel. Jacobus* v. *Van Wyck*, 157 N. Y. 495. It, therefore, becomes necessary to determine whether the position of auditor is fairly a subordinate one, for, if it is, a veteran occupying the position will be protected from arbitrary removal.

In considering the act giving protection to veterans from removal and having in mind that it is general in its application, except as to three specified exceptions, an elementary legal principle bearing on the construction of statutes by the court is to be kept in mind, and that is that, where a statute names specific subjects or persons, others must be excluded from its operation in accordance with the legal maxim, " The expression of one thing is the exclusion of another." Clearly, the same principle must apply, with greater force, to

specified exceptions from the operation of a general statute; and it is held that a proviso is to be strictly construed and takes no case out of the enacting clause which is not fairly within the terms of the exception. *Appeal of Clark*, 58 Conn. 207. The courts, therefore, while recognizing the further exceptions which have been grafted upon the veteran acts, should not extend nor apply them to cases which do not fall clearly, squarely or wholly within the enlarged implied exceptions.

It is the policy of the state to give to statutes preferring and protecting veterans in public positions a liberal construction in favor of veterans and the exceptions are not to be extended. *Matter of Seeley v. Stevens*, 190 N. Y. 158; *Matter of Stutzbach v. Coler*, 168 id. 422; *People ex rel. Kenny v. Folks*, 89 App. Div. 171; *People ex rel. Hoefle v. Cahill*, 188 N. Y. 489.

It thus becomes necessary to ascertain what the duties of auditor are under the charter of Buffalo and the ordinances enacted thereunder to enable the court to determine whether the position of auditor is essentially a subordinate one or not.

Section 55 of the charter expressly provides that the state Civil Service Law shall apply to the city of Buffalo and its employees, so that the question is to be decided under the Civil Service Laws.

The charter contains the following provisions, briefly summarized, bearing directly upon the question before the court:

That the common council shall audit all claims against the city (§ 15); that there shall be a department of finance, consisting of two offices, viz., the comptroller's office, of which the comptroller shall be the head, and the treasurer's office, of which the treasurer shall be the head (§ 56); that the comptroller shall superintend the fiscal concerns of the city and

manage the same, pursuant to law and the ordinances of the city, and shall be its chief fiscal officer (§ 57).

The provisions as to the auditor are found in the chapter relating to the department of finance, and are to the effect that the comptroller, with the approval of the common council, shall appoint an auditor whose duty it shall be to examine and report upon all accounts or claims against the city for work, labor, services, merchandise or material furnished the city, before the same shall be audited and ordered paid by the common council; that such auditor shall ascertain, before reporting, that the work or material charged for has been actually furnished to, or received by, the city; that the prices are in accordance with the contract therefor and are reasonable and just, and shall make a certificate to that effect on every account or claim, and that the common council shall not audit nor order paid any such claim unless it shall have been so examined, certified and reported upon by the auditor (§ 58). The auditor is not appointed for any definite term, and under a general provision of the charter (§ 484) is removable at pleasure, unless protected by the veteran acts.

Section 17, subdivision 2, of the charter, originally gave the common council authority to enact ordinances to prescribe the duties of all officers or persons elected or appointed, not prescribed in the charter. This subdivision was amended by chapter 120 of the Laws of 1909 by adding a provision authorizing the common council to prescribe the method of auditing and paying claims against the city; the methods by which officials and employees shall keep or assist in keeping account of work done for, or materials furnished to, the city, notwithstanding any provision of the charter to the contrary.

Section 58 of the charter, above cited, was not in

terms amended, but the common council, pursuant to the amendatory act of 1909, recast this section into an ordinance which merely provided that the auditor should examine all claims against the city and certify in writing thereto, as provided in the ordinance. The provisions of section 58, that the auditor should examine and report upon claims before the same should be audited and ordered paid by the common council, and that the common council should not audit or pay any claim unless the same should have been so examined, certified and reported by the auditor, were eliminated from the ordinance so substituted for the original provision of the charter. Ordinances, § 8, subd. 18.

Under this ordinance and others adopted pursuant to the act of 1909, which will presently be considered, the functions and duties of the auditor were, if anything, lessened, although the conclusions reached by me are not dependent upon this difference, as the work of the auditor remained essentially the same. It is fair to say, however, that under the amendatory act of 1909 the common council was given the power to reduce the functions of the auditor to zero; whereas, under section 58 of the charter, as originally adopted, it was probably mandatory that the auditor should report upon all claims for work or merchandise before the same should be audited and paid by the common council.

Section 58 of the charter, as it originally stood and as it appears in the ordinances in amended form, gives authority to the auditor to issue subpœnas for witnesses and the production of books and papers, in connection with the examination of claims against the city, and to administer oaths; and provides that in case of a refusal to be sworn or to appear the auditor may apply to a judge for a subpœna to compel such attendance before a judge for examination, and that the per-

son shall then be examined before the judge, and the auditor is also given authority to employ one clerk, and as many more as shall be authorized by the common council. I am of the opinion that these provisions do not change the character of the position of auditor, which is to be determined by the duties required to be performed by the auditor, and for which he may require, and doubtless does require, assistance. It may be noted in this connection, as showing the subordinate character of the position of auditor, that he cannot compel the attendance of witnesses before him, if they refuse to appear, but that their subsequent appearance must be before a judge; whereas, in cases where provision is made in the charter for the attendance of witnesses before heads of departments, such as the mayor, the police and fire commissioners, and committees of the aldermen and councilmen, such attendance of witnesses, in case of refusal, is compelled by the court, under express provisions of the charter, before the heads of departments and committees themselves, and not before a judge. Charter, §§ 31, 49, 195, 255.

Coming now to the ordinances relating to the certification, auditing and payment of claims against the city, which were enacted in their present form subsequently and pursuant to the amendatory act of 1909, these ordinances appear under the title " Chapter III. — Finance," the common council evidently treating them as belonging in the department of finance, of which the comptroller is the head.

The ordinances in question prescribe a method and routine of certifying, auditing and paying all claims against the city, and the duties and relationship of the auditor thereto. Although subdivision 18 of section 8 of the ordinances, which re-enacts in modified form section 58 of the charter, provides that the auditor

shall examine all claims of every kind against the city and certify in regard to the same, as provided in the ordinances, it will be found that the ordinances themselves do not require the auditor to certify or pass upon various groups of claims at all, and that they do not come to him for examination or certification.

Claims for salaries or wages of city officials and employees, which constitute a very large part of the city's expenditures, are required to be set forth in payrolls, certified by the heads of the departments, and they are prepared by, or delivered directly to, the city clerk, and do not go to the auditor at all. Claims for damages on account of death caused by negligence, or for injuries to persons or property, must be filed with the city clerk and corporation counsel and transmitted by them directly to the common council, and can be paid in no other way, and do not come before the auditor for any purpose.

Claims for interest and principal on city bonds must be set forth in a statement, prepared and certified to as correct by the comptroller, and filed with the auditor, who is required to certify the same back to the comptroller, the auditor acting apparently in a perfunctory way regarding the same.

The duties of the auditor are limited substantially to claims for work and materials furnished to the city, concerning which it is provided that such claims must first be made out in detail and verified by the claimant as just and correct, and then filed with the head of the department for which the labor or merchandise was furnished. The head of the department must then certify that the charges set forth in the claim are just and correct and the claim, so certified, is delivered to the auditor.

It is apparent that the critical examination and certification of claims of this character are lodged with

the heads of departments in which the claims arise. It would, indeed, be physically impossible, under the system provided by these ordinances, for the auditor to determine personally whether the work had been performed or the materials delivered, or what was their actual condition, quantity or quality, as, in most cases, the work has been done and the materials consumed before any claim therefor reaches the auditor. The function of the auditor, under these circumstances, is, from its nature, clerical, or a checking-up process.

The ordinances further provide that, if the auditor does not certify to a claim, he must forward it to the common council with his reasons for not certifying it, and the common council may audit and pay the same; and that, even as to claims which have been audited, the mayor or common council may stop the payment of the same, as if they had not been certified by the auditor. Where claims for labor or materials have been certified by the heads of departments and the auditor, the comptroller must further certify that their payment will not overdraw the moneys appropriated for the purposes out of which the claims arise. When such claims for labor or materials are so certified by the heads of departments, the auditor and the comptroller, and their payment is not countermanded by the common council, they may be paid, without further action of the common council, by warrants drawn and signed by the city clerk and countersigned by the comptroller. But it is to be observed that even these routine claims for work or materials at all times remain under the control and subject to the direction of the common council and the mayor, as the ordinance specifically provides that payment of such claims can be stopped at any time, and, if so stopped, the same shall be referred to the common council, and in view of the fact that the charter provides that all claims shall be

audited by the common council, it is doubtful whether
the ordinance permitting the payment of even these
routine claims without express resolution of the com-
mon council, is valid; but, as I view the matter, it is
not necessary to determine this point in reaching the
conclusion that I do as to the essentially incidental
and subordinate functions of the auditor in the routine
method which the common council has by ordinance
prescribed for the payment of claims against the city.

The method of auditing claims against the city, thus
prescribed by the charter and the ordinances, shows
that the duties of the auditor are not exercised upon
large groups of claims involving doubtless the expen-
diture of the greater part of the taxes raised for pub-
lic purposes, and that the auditor's functions are
essentially limited to what may be called the routine
claims arising in the various departments for work
and material, and that as to these the certification of
the auditor is only a clerical and intermediate step
in the process of payment, and not an audit at all as
this term is understood in the law under authorities
below cited, the important functions in this regard
being necessarily performed by the heads of depart-
ments and by the common council. And not even as
to these routine claims for work or material is the
action of the auditor final or conclusive, but the com-
mon council, at all times, retains and in many cases
exercises its supreme power, as the city's designated
auditing body, to direct or withhold payment of claims,
irrespective of the action of the auditor.

The common council doubtless cannot, as a matter
of law, divest itself, under the charter as it stands, of
its powers or duties as the city's auditing body, and
it can pay claims that have not been submitted to the
auditor at all, notwithstanding the ordinances requir-
ing the submission of certain claims to the auditor for

certification. This view is confirmed by a decision recently rendered by Mr. Justice Wheeler, in which I entirely concur, in the case of *People ex rel. Foster* v. *Justice,* in which the relator obtained a writ of mandamus compelling the drawing of a warrant in his favor, upon a resolution of the common council directing the drawing thereof. The relator's claim grew out of a contract between himself and the city for the erection of a public building, and the claim was for the contract price and was presented to the common council directly and the common council directed the claim paid. The comptroller refused to deliver a warrant, upon the ground that such claim had not been presented either to the department of public works or to the city auditor and certified to by them, as provided by the ordinances. The court, in reaching its conclusion, referred to the amendatory act of 1909, above cited, and held that the method prescribed by the ordinances for presenting and auditing claims was really for its own guidance and protection, and that, notwithstanding such ordinances, the common council could ignore the auditor entirely and act directly upon all claims. This decision, as I view it, recognizes the incidental and subordinate character of the duties devolving upon the auditor.

The provisions of the charter relating to the comptroller and to the auditor, it seems to me, of themselves lead to the conclusion that, within the intent of the charter, the auditor is a subordinate of the comptroller and of the comptroller's office. It is to be noted that, under the charter, the heads of all city departments, properly so called, are elected either by the people or appointed by the mayor or the common council; whereas the auditor is appointed by the comptroller. The charter provides that there shall be a department of finance, consisting of two offices, the

comptroller's, of which the comptroller shall be the head, and the treasurer's, of which the treasurer shall be the head, and that the comptroller shall superintend the fiscal concerns of the city and manage the same, pursuant to law and the ordinances, and shall be its chief fiscal officer, and then provides that the comptroller, with the approval of the common council, shall appoint an auditor, whom he may remove at pleasure. These provisions all occur in chapter 1, title 4, of the charter, and are under the heading "Department of Finance." There can thus be no separate or independent department known as the auditing or auditor's department, as the charter provides but for one department of finance. As the comptroller appoints and can at pleasure remove an auditor, this auditor must necessarily be an appointee in the comptroller's office of the department of finance. The auditor would thus seem, by necessary implication, to be subordinate to and under the control and direction of the comptroller, for otherwise the comptroller would not be the head of the comptroller's department, nor in a position to superintend and manage the fiscal concerns of the city, pursuant to law and the ordinances, nor would he be its chief fiscal officer.

The fact that the auditor is appointed and removable at pleasure by the comptroller, as distinguished from heads of departments, who are elected or appointed by the mayor, or the common council, is, of itself, a strong circumstance, especially when considered in connection with the other provisions of the charter referred to, though not necessarily conclusive, as to the subordinate character of the position of auditor. It seems to me that the comptroller, as the head of the comptroller's department and as the chief fiscal officer of the city, and as the one charged with superintending and managing the fiscal concerns of

the city, pursuant to law and the ordinances, was intended to be vested with the general supervision of the work of the auditor, and that if the auditor performed his duties in a manner unsatisfactory to the comptroller he could remove him from office summarily, unless he was a veteran, in which case, he could still be removed, under such circumstances, upon proper charges.

The intermediate or incidental duties devolving upon the auditor, under the charter and ordinances, seem to me fairly to warrant the statement that the title "auditor" cannot properly be applied to this office, and that the auditor in Buffalo is not, in the common, or certainly not in the legal, understanding of this word, an auditor at all. The Century Dictionary defines an "auditor" as "a person appointed and authorized to examine an account or accounts, compare the charges with the vouchers, examine parties and witnesses, allow or reject charges and state the result." The auditor in Buffalo does not examine accounts, as that term is understood, as the word "accounts" does not mean bills or claims, although it is, at times, popularly used in that sense. In the definition above given, it is stated that an auditor is to compare charges with the vouchers. The vouchers are the equivalent of the verified written claims presented by claimants, and there are no charges with which the vouchers are to be compared.

The legal authorities are still more strongly to the same effect. In *Matter of Murphy*, 24 Hun, 592; affd., 86 N. Y. 627, it was held that, where a statute provided that an itemized bill growing out of the insurance department should first be approved by the superintendent of insurance and then audited by comptroller and paid by comptroller's warrant, the approval of the bill by the superintendent was not the

equivalent of an auditing, and that the word " ' audit ' undoubtedly means to hear and examine, to pass upon and adjust," and the court held that the word " audit " plainly means a judicial investigation and decision as to the merits of a claim, and the court further said: " Where a statute simply requires that a bill of charges shall be first approved by one officer and then audited by another, we see no reason to construe the statute so as to make the latter requirement of no practical effect. We should rather construe it so that both requirements may stand." The authority to audit includes the power to ascertain and determine the amount of claims entitled to be paid, and to sit in judgment upon the questions of both liability and amount, and to pay or direct payment, or, in other words, finally to dispose of the question of the payment of a claim. *People ex rel. Vandervoort* v. *Cooper*, 24 Hun, 337; *People ex rel. Grannis* v. *Roberts*, 163 N. Y. 70; *Matter of Freel*, 148 id. 165; *State* v. *Brown*, 10 Oreg. 215; *Sawyer* v. *Mayhew*, 10 S. D. 18.

. The charter and ordinances themselves afford internal evidence that the auditor of Buffalo is not, in fact or in law, an auditor, as I do not find the verb " audit " applied to the work of the auditor either in the charter or in the ordinances, but only applied to the action of the common council upon claims. Thus, section 15 of the charter provides that the common council shall audit all claims against the city, and section 58 of the charter, as it originally stood and which authorizes the appointment of an auditor, provides that it shall be the duty of the auditor " to examine and report upon all accounts or claims against the city for work, labor, services, merchandise or material furnished the city, before the same shall be audited and ordered paid by the common council," and under subdivision 18 of section 8 of the ordinances, amending this charter

provision, it is provided that it shall be the duty of the auditor to examine all claims and to certify in writing, as provided in the ordinances. So, in subdivision 9 of the same section it is provided that the auditor must certify that a claim is correct, and, if he cannot so certify, he must forward it to the common council, which "may audit" and order drawn a warrant for such claim. It thus appears that the verb "audit" is never applied to the auditor, but only to the common council, which remains the only auditing authority of the city.

Another consideration strongly supporting the view that the auditor is a subordinate employee in the municipal service is found in the practical construction which has for years and uninterruptedly been placed upon the position and its duties by the common council and mayor of the city, in the very ordinances which have been passed and amended from time to time, both before and subsequent and pursuant to the amendatory act of 1909, and it is well settled that such practical construction is an important and, at times, controlling consideration in determining the meaning and intent of the provisions of the charter which created the position of auditor. *People ex rel. Sears* v. *Tobey*, 153 N. Y. 381, 386; 36 Cyc. 1139, 1142, and cases cited. In the *Sears case, supra,* this principle of practical construction was applied in a veteran case in determining the character and duties of a given position to which the veteran was held entitled.

Applying this principle to the position of auditor in Buffalo, it appears that, under section 58 of the charter creating the position, as it originally stood, as well as under and since the amendatory act of 1909, the ordinances, as they originally stood and as they have since been amended, in fixing the salaries of city officials and employees, classified the position of

auditor as one of " the subordinate employees of this department," referring to the comptroller's office in the department of finance, under which the auditor and other subordinate employees in the comptroller's office were grouped; and further, that the auditor has likewise been placed in the comptroller's department in the ordinance prescribing the amount of the official bonds to be given by different officials and employees.

The conclusion that I have reached that the position of auditor is essentially a subordinate one and that its incumbent, when he is a veteran, is protected from summary removal is sustained by the controlling authorities in our courts, as I read them. In *People ex rel. Jacobus* v. *Van Wyck*, 157 N. Y. 495, which is perhaps the first leading case on the subject, it was held that offices involving a substantial measure of discretion were not within the protection of the veteran acts. The office involved in that case was that of a member of the board of assessors of the city of New York, which was held to be one of the leading appointive executive offices of the municipality and one requiring the exercise of a substantial measure of discretion, a ruling obviously correct, when the important, complex and independent duties of the position were considered. The court in that case stated that it will be difficult at times to determine whether a given position is a subordinate one or not, and that possibly no rule can be laid down by which one class can always be readily distinguished from the other. In other words, each position as it comes up for determination must rest upon the particular duties attaching thereto. Among the positions, some of which, as it seems to me, are of greater importance and independence as regards their duties than is that of auditor in Buffalo, which have been held protected by the veteran act, may be mentioned that of superintendent of repairs

of a section of the Erie canal (*Matter of Seeley* v. *Stevens*, 190 N. Y. 158); special agents in the department of the commissioner of excise (*Matter of Weaver*, 72 Misc. Rep. 438; affd., 147 App. Div. 420 and 204 N. Y. 676); clerk in the office of coroner of the borough of Richmond (*People ex rel. Hoefle* v. *Cahill*, 188 id. 489); water registrar of the city of Brooklyn (*People ex rel. Tate* v. *Dalton*, 158 id. 204); warden of the city prison in New York city (*People ex rel. Fallon* v. *Wright*, 158 id. 444); clerk of the police court, Syracuse (*People ex rel. Sears* v. *Tobey*, 153 id. 381); tax assessor in the department of the commissioners of taxes of New York city (*People ex rel. Haverty* v. *Barker*, 1 App. Div. 532; affd., 149 N. Y. 607); superintendent of out of door poor for the borough of Richmond (*People ex rel. Kenny* v. *Folks*, 89 App. Div. 171); collector of fees in Brooklyn market (*People ex rel. Speight* v. *Coler*, 31 id. 523; affd., 157 N. Y. 676); superintendent of small parks in the city of New York (*Jones* v. *Willcox*, 80 App. Div. 167).

It is also well settled that the protection of the veteran act applies to employees of every grade in the public service (*People ex rel. Fonda* v. *Morton*, 148 N. Y. 156); to officers or officials as well as to employees (*Matter of Weaver*, 72 Misc. Rep. 438; affd., 147 App. Div. 420 and 204 N. Y. 676; *Cullinan* v. *Furthman*, 187 id. 160; *Clement* v. *Belanger*, 120 App. Div. 662); to positions in the exempt class as well as in the competitive or noncompetitive class (*Matter of Seeley* v. *Stevens*, 190 N. Y. 158; *People ex rel. Hoefle* v. *Cahill*, 188 id. 489).

Nor does the fact that the duties of a given position are defined by statute deprive the incumbent of the protection of the veteran act against arbitrary removal. *People ex rel. Sears* v. *Tobey*, 153 N. Y. 381.

So the fact that a statute, creating or authorizing

a position, does not state that its incumbent shall be subject to the direction of the official making the appointment, does not determine that the position is not a subordinate one, if it is apparent from the nature and duties of the position that it is subject to the direction of the appointing power. *People ex rel. Hoefle* v. *Cahill*, 188 N. Y. 489, 493. It is usually to be presumed that, where the head of a department has the power at pleasure to appoint and remove others to and from given positions, he is responsible for their action and they are his subordinates. *People ex rel. Tate* v. *Dalton*, 158 N. Y. 204, 213.

As has been shown, it seems to me, that the auditor holds a subordinate position and is in no fair sense an independent officer, and, this being so, he is protected, when a veteran, against removal without charges and a hearing.

The corporation counsel on behalf of the respondents contends that the appointment of Capt. Christey could only have been for a probationary term under section 9 of the Civil Service Law which provides that all appointments or employments in the classified service, except those of veterans of the Civil War, shall be for a probationary term not exceeding the time fixed in the civil service rules. It is claimed that as the position of auditor, though in the exempt class, is yet in the classified service, as defined by the Civil Service Law, only a probationary appointment can be made thereto, with the single exception of veterans of the Civil War, and that, as the applicant is a veteran not of the Civil War but of the Spanish War, his appointment by the former comptroller could only have been for a probationary term, during which he could be removed at pleasure and without charges or a hearing. I am unable to concur in this contention for various reasons. It is doubtful, notwithstanding

the general provisions of section 9 of the Civil Service Law, whether a probationary term is ever applicable to an appointment in the exempt class. At any rate, it is evident that the civil service commission of Buffalo takes this view, as their rules, which are before the court upon this motion, show that no probationary term has 'been fixed for any position in the exempt class; so that it is impossible to appoint any one to the exempt class for a probationary term prescribed by the rules. Again, it is clear that the rules contemplate and authorize only permanent appointments, from the outset, to positions in the exempt class, as rule XIV provides that appointments to positions in the exempt class may be made without examination, but the appointing officer shall file with the commission a formal notification thereof in writing, setting forth the name of the appointee, the date of beginning service, the term for which appointed and the name of the person in whose place appointed. This clearly contemplates a permanent appointment.

On the other hand, rule XX provides that all appointments to positions in the competitive or noncompetitive class shall be made probationary for a term of three months, and that the retention in the service of a person so appointed after the end of such term shall be equivalent to his permanent appointment. It is thus clear that the civil service commission considered either that section 9 of the Civil Service Law providing for probationary appointments was not applicable to positions in the exempt class, or in any event so treated the matter, not having fixed any probationary term whatsoever for positions in the exempt class, and the soundness of this view of the matter by the civil service commission seems to me to be apparent.

In the view I have taken of the matter and the con-

clusion I have reached, the applicant is entitled to a writ of peremptory mandamus granting him the relief which he asks.

Application granted.

---

John H. Crutts, Plaintiff, v. Dennis W. Daly, as Sheriff, etc., Defendant.

(Supreme Court, Niagara Trial Term, January, 1914.)

Chattel mortgages — abandonment of chattels by absconding mortgagor — action against sheriff to recover chattels — refiling at end of year.

Where a mortgagor of chattels absconds, and they are seized on an attachment against them, the mortgagee acting in good faith is justified in taking possession of the property under the insecurity clause of his mortgage which was not due; and he is entitled to replevin the property from the sheriff if at the commencement of the action he has the right to reduce the chattels to his possession.

Where the absconding mortgagor abandoned the chattels on the farm of which he was the tenant, the mortgagee was justified in taking possession of the property under the insecurity clause of his mortgage, and having taken such possession the chattels were not subject to seizure under an attachment against the mortgagor.

A complaint in the action against the sheriff to recover the chattels, which alleges plaintiff's title and that defendant wrongfully took them, is sufficient under section 1721 of the Code of Civil Procedure, though there was no allegation that plaintiff, whose mortgage was not yet due, " deemed himself unsafe" and so entitled to possession under the insecurity clause.

The commencement of the action as against defendant sheriff was equivalent to plaintiff taking possession, and the fact that he did not thereafter and at the end of the year refile his mortgage did not preclude a recovery.

Action of replevin, tried by court without a jury.