In the Matter of the Application of ALBERT F. VOLGENAU, on Behalf of Himself and All Others Similarly Situated, Petitioner, for a Mandamus Order against JAMES E. FINEGAN and Others, Composing and Constituting the Municipal Civil Service Commission of the City of New York, FIORELLO H. LAGUARDIA, as Mayor of the City of New York, and WILLIAM GORHAM RICE and Others, Composing and Constituting the State Civil Service Commission of the State of New York, Respondents.*

Supreme Court, Special Term, New York County, January 17, 1937.

* Affd., 250 App. Div. 757.

*Hartman, Sheridan & Tekulsky* [*Sol Tekulsky* and *Philip Friedman* of counsel], for the petitioner.

*Paul Windels, Corporation Counsel* [*Jeremiah M. Evarts* of counsel], for the defendants Municipal Civil Service Commission and Fiorello H. LaGuardia, as mayor of the city of New York.

*John J. Bennett, Jr., Attorney-General* [*Robert P. Beyer, Assistant Attorney-General* of counsel], for the defendant State Civil Service Commission.

VALENTE, J. The question submitted upon this application for a mandamus is the propriety of the action of the civil service authorities in striking thirty-four clerks of the Magistrates' Courts of the City of New York from the exempt class of the municipal civil service classification and subjecting those positions hereafter to competitive examinations. The grievance is asserted by the petitioner, one of the clerks who was first appointed to his position in 1907 for the four-year term provided by the statute and reappointed every four years thereafter. His present appointment expires in 1939. The commission has announced a promotion examination to the position of clerk from among the assistant clerks already in the competitive class. At the same time, however, the present incumbents are required to take a non-competitive or qualifying examination and attain an average of seventy-five per cent at such examination, to retain their positions. This require-

ment is pursuant to rule IV, subdivision 3, of the rules of the commission, which reads as follows: " Whenever a position in the exempt class or the non-competitive class is placed in the competitive class, the incumbent of the position, if there be any at the time of such reclassification, may continue to hold the position, with all the rights and privileges of a competitive employee provided that such an incumbent of an exempt position must pass and such an incumbent of a non-competitive position may be required to take a qualifying examination to be given by the commission. In the event of the failure of such an incumbent to pass the examination, the position held by him shall be deemed vacant and it shall then be filled in the manner provided by these rules for the filling of competitive positions."

The municipal civil service commission after several hearings, at which briefs were submitted pro and con, adopted a resolution on June 5, 1935, removing thirty-four court clerks from the exempt class. This resolution was approved by the State Civil Service Commission on the 27th day of February, 1936. The petitioner institutes this proceeding on behalf of himself and all the other city magistrates' clerks similarly situated. These clerks appeared at the hearings before the municipal civil service commission in opposition to the proposal to strike their positions from the exempt class, and presented a long brief giving in detail the duties of their positions, in order to indicate that it was not practicable to fill them by competitive examination. A copy of this list of duties is contained in the papers of the respondent in opposition to the petition.

The chief argument on behalf of the petitioner is that section 13 of the Civil Service Law makes the position of petitioner exempt from competitive examination as a matter of law, and it is beyond the power of the commission to order an examination in such a case. (*Matter of Kilcoyne* v. *Lohr*, 226 App. Div. 218, affd., 252 N. Y. 526.) In that case the statute clearly provided (§ 13, subd. 2) that the secretary of each municipal board was in the exempt class. The position involved in the *Kilcoyne* case was secretary of the board of assessors of the city of Lackawanna. The amendment making the secretary of each State department and each municipal board exempt went into effect March 30, 1927, pursuant to chapter 440, of the Laws of 1927. The amendment was practically a clarification of the statute as it existed before, to the effect that one secretary of each officer, board and commission was exempt. The old statute did not specify whether it was limited to State officers only, or included municipal boards as well. But in *People ex rel. Toomey* v. *Heath* (199 App. Div. 909), decided prior to the amendment, it was held that the board of assessors of that city had the

right to appoint a secretary who was in the exempt class of the civil service. Thus, we find a decision that a position judicially construed as exempt under the law cannot be put into the competitive service by the municipal civil service commission. This final argument is sought to be applied in the interpretation of subdivision 3 of section 13, which exempts the following: "One clerk, and one deputy clerk if authorized by law, of each court, and one clerk of each elective judicial officer, and also one deputy clerk, if authorized by law, of any justice of the Supreme Court."

The petitioners argue that the thirty-four city magistrates' districts are separate courts within the meaning of subdivision 3, and that they belong to the exempt class by specific mandate of the statute. They seek to distinguish the case of *Matter of Friedman* v. *Finegan* (268 N. Y. 93), in which the classification of the clerks of the Municipal Court of the City of New York in the competitive class was upheld by the Court of Appeals. While they argued, as appears from the syllabus of respondents' argument in the official report (268 N. Y. 93, at p. 96), that the several districts of the Municipal Court are separate courts within the intent of the statute, the petitioners there were overruled by the highest court, which held the several districts to be divisions of a single court. The present petitioner now applies a similar argument to show that the Magistrates' Courts are in fact separate courts and not merely terms or subdivisions of a single court, and each one of these courts is thus entitled to one exempt clerk by the specific language of subdivision 3 of section 13.

If the statute dealing with Magistrates' Courts intends to establish many such separate courts, not a single one, it would seem to follow from the mere wording of section 13 that it directs an exempt clerk in each one of such courts. On the other hand such a direction, even though statutory, must be in harmony with the fundamental constitutional provision with respect to civil service; otherwise it must be judged invalid. We must, therefore, begin with an examination of the constitutional provision, as Chief Judge CRANE, does in *Matter of Friedman* v. *Finegan* (*supra*), in order to construe section 13 in the light of the constitutional mandate.

The Constitution of this State by article 5, section 6, provides as follows: "Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive. * * * Laws shall be made to provide for the enforcement of this section." This provision has been in the Constitution since 1894 and was originally numbered

section 9. The comment of Chief Judge CRANE upon this constitutional provision is as follows: " The fundamental underlying will of the People as expressed here is that there shall be competitive examinations for all civil service appointments. Exemption is the exception, not the rule. Wherever it is practicable to do so, the Legislature and the commissions, appointed by it, shall provide for competitive examination."

The purpose of this observation is obviously to emphasize the guiding hand of the Constitution in the conduct of the civil service, and the narrow path of duty prescribed to the Legislature. The formulation of the body of laws would thus seem a mere unfolding and codification of what is expressed and implied in the constitutional provision. This is emphasized by his next observation taken from the opinion of Judge O'BRIEN in *People ex rel. McClelland* v. *Roberts* (148 N. Y. 360, 366): " If the Legislature should repeal all the statutes and regulations on the subject of appointments in the civil service the mandate of the Constitution would still remain, and would so far execute itself as to require the courts, in a proper case, to pronounce appointments made without compliance with its requirements illegal." The last statement, originally made at the time when the constitutional provision was but in its infancy, has been the subject of some elucidation in subsequent years. As quoted by Chief Judge CRANE in relation to the subject he is discussing, it can have but one meaning — the source of authority for exempting a position must be sought in the Constitution itself. The statute is really only a secondary source of authority. On the other hand, like all broad principles, it has to be considered with qualifications. It was so qualified in *Chittenden* v. *Wurster* (152 N. Y. 345, at p. 355), where the court said with reference to Judge O'BRIEN's observation: " But, in making this statement, he had reference to the mandatory provision already alluded to, as appears from the clause immediately preceding, and not to the necessary machinery for the conducting of a competitive examination." Evidently, the reference in the constitutional provision itself for the adoption of laws to provide for the enforcement of the section indicates a necessity for legislation to establish the machinery for conducting competitive examinations. As to the extent to which the constitutional provision itself is self-executing without the necessity of supplementary legislation, Judge HERRICK gives an elaborate exposition of that phase in *Matter of Sweeley* (12 Misc. 174, 179; affd., *People ex rel. Sweeley* v. *Wilson*, 146 N. Y. 401). He says: " A constitutional provision is self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not

self-executing when it merely indicates principles without laying down rules by means of which those principles may be given the force of law." Judge HERRICK particularly emphasizes the fact that the constitutional mandate nullified any existing law in conflict with it. " While a provision of the Constitution may need legislation to enforce its principles, and give them affirmative effect yet, without any legislation, such provision may have a negative force, in prohibiting acts in violation of its terms and nullifying statutes repugnant to its principles, and thus, while from lack of legislation its principles cannot be affirmatively enforced, neither, on the other hand, can those principles be lawfully violated, or any statute violating them be enforced."

The foregoing discussion is intended as a foundation for the analysis of the relation between civil service statute law and the civil service provisions of the Constitution. When the latter went into effect there was already, as is observed in *Chittenden* v. *Wurster (supra)*, a system of existing civil service laws capable of putting into immediate practical operation the directions of the constitutional mandate. The merit system in the civil service was adopted by statute in 1883 (Laws of 1883, chap. 354). The laws were unhampered by any constitutional restriction, and thus they contained a provision for giving preference for appointment to the civil service, over other persons of equal standing, to honorably discharged soldiers and sailors of the Civil war. This seeming discrimination was validated by express constitutional sanction, by being embodied in the civil service section of the Constitution. But in 1894, prior to the adoption of the Constitution, a new provision was added exempting the aforementioned veterans from the civil service rules of the State, where the compensation did not exceed four dollars a day (Laws of 1894, chap. 717). As soon as the Constitution of 1894 went into effect, the question arose as to the status of the existing legislation on the subject. So far as it did not conflict with any constitutional provision it was held in full force and not to require re-enactment. One of the first decisions on the effect of the new Constitution on the existing law was to declare unconstitutional the exemption from all civil service laws of veterans of the Civil war, where the positions paid less than four dollars a day. (*People ex rel. Sweeley* v. *Wilson, supra.*)

In 1895 it was sought to overcome the constitutional objection to the invalidated law by repassing the provision for exemption of veterans appointed to positions paying less than four dollars a day (Laws of 1895, chap. 344). The Legislature endeavored to cure the objection by stating its motive to be gratitude to the veterans and declaring that an examination for such applicants was neither

practical nor necessary, and directing merely a general examination to ascertain the merits and fitness of the applicants.    In other words, it was sought to appoint such veterans by noncompetitive examination.    The Court of Appeals promptly declared this provision unconstitutional.    (*Matter of Keymer*, 148 N. Y. 219, 226.)    It held particularly offensive and contrary to the Constitution the arbitrary declaration in the statute that an examination was not practicable or necessary in cases where the compensation does not exceed four dollars per day.    It is interesting to note the rule laid down, that the Legislature could not arbitrarily say a competitive examination was not practicable, but that the declaration must be based upon reason, not upon mere fiat.    The court refused to define the situations in which the Legislature could declare that it was not practicable to conduct competitive examinations, merely contenting itself with the following observation: " It is quite possible there are or will be offices and positions, by reason of peculiar duties, which experience will demonstrate cannot be filled by competition, and when such a case arises it will be competent for the Legislature to provide for it by an appropriate act disclosing the circumstances which justify its intervention."    While the court refused to define the situations which made it impracticable to conduct competitive examinations, there are certain statutory enactments which speak for themselves and are clearly within the spirit, if not the letter, of the Constitution.    In section 15 of the Civil Service Law three types of cases involving exemptions from competitive examinations are provided for.    The first and third clearly justify themselves as stopgap, temporary or emergency appointments ( *Koso* v. *Greene*, 260 N. Y. 491), and require no comment.    The second type is one clearly within the letter of the law, where it is intended to appoint to a position in which peculiar or exceptional qualifications of a scientific, professional and educational character are required.    The civil service may suspend the rules in any such given case, but solely for the particular incumbent.    But a large number of positions included in the exempt class are specifically enumerated in section 13 of the Civil Service Law.    This enumeration, to be valid, must find support in the constitutional provision.    In other words, the positions are included in the exempt class because it is not practicable to hold competitive examinations for them.    An analysis of the positions enumerated will show that the reason why competitive examinations are not practicable is because the incumbents occupy confidential relations to the appointing officer.    The placing of positions of confidence in the exempt class was justified in *Chittenden* v. *Wurster* (*supra*), although there is no mention of such a test of exemption in the

Constitution. The court considered confidential positions to be within the intent of the Constitution as not practicable of selection by competitive examinations. It did not deem it within constitutional intendment and for the best interests of the public service to have the appointment of one standing in personal relation to the appointing officer, to be selected by an open-wide test instead of leaving the determination of the fitness of the appointee to the selecting official himself. There is another reason not specifically mentioned in that opinion, namely, that, prior to the Constitution of 1894, confidential positions were exempted by statute from examinations. The whole framework of the existing Civil Service Law was continued, as we have seen, except such portions as were contrary to the express constitutional mandate. Provisions of the law relating to the confidential positions were held to be consistent with the new Constitution in that it was considered impracticable to hold examinations for such positions. It is this test of the confidential character of the positions which he and others like him occupy that the petitioner endeavors to make in justifying his request for continued inclusion in the exempt class, pursuant to section 13 of the Civil Service Law.

At the outset it should be mentioned that the phrase " confidential position " does not cover every position of trust and confidence. A civil service examiner is certainly one upon whose integrity and secrecy the greatest reliance must be placed. And yet he belongs to the competitive class. He does not occupy any relation of personal confidence to the particular officer or board which appoints him, and in his case the most important desideratum is a broad knowledge and an ability to judge the intelligence of others — matters which can be well determined by competitive examination. In *People ex rel. Drake* v. *Sutton* (88 Hun, 173, 175) the court, in defining the position of confidential clerks in relation to the exemption statutes, said: " In order to fall within the exception of the statute the relations between the clerk and the appointing officer must be of a personal nature. The performance of official duties does not establish a confidential relation to the head of the department."

In *People ex rel. Sears* v. *Tobey* (153 N. Y. 381, 387) we find a similar expression. The case has an interesting relation to the one at bar because it deals with the civil service status of a clerk of the Police Court of the city of Syracuse. After defining the statutory duties of the clerk as laid down in the charter of the city of Syracuse, the court said: " We are unable to perceive anything confidential in these statutory duties. The position should doubtless be filled

by a man of intelligence, as the duties are such as would require in their performance a fair order of ability. There is nothing secret or confidential as between the police justice and the clerk in the manner in which these duties are to be discharged. Indeed, they are essentially of a public character."

Petitioner endeavors to distinguish that case by arguing that the definition of the duties of the Police Court clerk there deprived it of its confidential character. There is very little substance in that contention. The duties of the chief clerk of the board of city magistrates are defined in detail by section 85 of the Inferior Criminal Courts Act (formerly § 55-a, renum. § 85, and amd. by Laws of 1933, chap. 746). Yet no one will venture to say that such definition prevents the position from being a confidential one. In fact, that position comes within the reasonable provisions of section 13 of the Civil Service Law, whereby one clerk and deputy clerk of a court or a board is in the exempt class. The thirty-four clerks of the City Magistrates' Courts do not have their duties defined with great particularity, although there is enough in section 85 to indicate their relation to the chief clerk and their duties to him. Section 89 (formerly § 57) (amd. by Laws of 1915, chap 531, and renum. § 89 by Laws of 1933, chap. 746) also provides for the giving of a bond and section 84 (formerly § 55) (amd. by Laws of 1915, chap. 531, and renum. § 84 by Laws of 1933, chap. 746, § 9) permits the chief magistrate to assign the clerks *and other employees* to such courts and to such duties as he may determine. The fact that the chief magistrate may assign duties to the clerks certainly does not make their position confidential. In that respect the power of the chief city magistrate in relation to the clerks is the same as to other employees. The failure of the statute to make specific enumeration of the duties of the clerks seems to be utterly without significance. The *Sears* case would seem to be almost decisive against the claim of the petitioner to exempt classification. Why, then, it may be asked, have these positions been treated as exempt until the present year? Might not that indicate a previous disregard of the law? Petitioner will say that the exempt classification is justified by the demands of section 13 of the Civil Service Law, and the other point is to be regarded as subordinate and as having to yield to the provisions of that section. I shall consider the validity of this point last and shall at present limit myself to a consideration of what seems like the belated removal of the clerks of the magistrates' courts from the exempt class to the competitive class. In considering this point, I shall ignore for the moment the interpretation of section 13.

The Constitution, as we have pointed out repeatedly, requires competitive examinations to be held wherever practicable. What may at the outset be considered not practicable by reason of lack of experience with the system may become practicable as a result of the accumulated experience of a branch of our government. The civil service system is a matter of growth. It is not strange that positions, which earlier it would have been inconceivable to fill by competitive examination, have later been found to be practicable to fill in that manner. It cannot be said that any constitutional mandate was violated because a position subsequently placed in a competitive class was for a long time in the exempt class. Such a situation merely indicates that the government had only come to realize by experience the feasibility of putting the given position in the competitive class. This was the situation with regard to the Municipal Court clerks, who were put in the competitive class in 1934, and it is the situation in the instant case in which the classification was made in the current year. On the surface, again ignoring for the moment the provisions of section 13, it would seem that the *Sears* case is decisive of the lack of the feature of personal confidence in the position of clerk of a Magistrates' Court.

But let us consider the plea of the petitioner that the matter cannot be determined justly without a complete judicial hearing of the duties of the office in order to decide whether the position of Magistrates' Court clerk, as now constituted, involves personal confidence. The clerks have had a full hearing before the municipal civil service commission. The duties of their position were fully considered and are specifically included in the moving papers. A situation is thus created to which the following language of the Court of Appeals definitely applies: " If the position is clearly one properly subject to competitive examination, the commissioners may be compelled to so classify it. On the other hand, if the position be by statute or from its nature exempt from examination and the action of the commission be palpably illegal, the commission may be compelled to strike the position from the competitive or examination class, though in such case redress by mandamus would often be unnecessary, as a valid appointment could be made notwithstanding the classification. *But where the position is one, as to the proper mode of filling which there is a fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification.*" (*People ex rel. Schau* v. *McWilliams*, 185

N. Y. 92, at p. 99, as quoted in *Matter of Simons* v. *McGuire*, 204 id. 253, 258.)

It is to be observed that the italics are by the Court of Appeals in the *Simons* case, although the quotation is from the *Schau* case. It does not appear that the act of the municipal civil service commission in classifying the position of clerk was arbitrary. On the contrary, the decision was arrived at after very full hearings and study of briefs. There is at least " a fair and reasonable ground for difference of opinion among intelligent and conscientious officials * * * as to the wisdom of the classification." And, as was said in the *Simons* case: " This variance of opinion is alone sufficient to bring the case at bar within the rule laid down in the *Schau* case," namely, that " the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification."

Perhaps I might be entitled to pause here and decide that the petitioner is not entitled to either peremptory or alternative mandamus. But he has so exhaustively argued in his brief on the applicability of section 13 of the Civil Service Law that it seems proper to consider whether an analysis of the purpose and intent of that section would not require the granting of some relief. It is true that the Legislature cannot place a position in an exempt class when the constitutional principle puts it in the competitive class. On the other hand, some weight should be put upon an act of Legislature in placing a position in the exempt class as against the judgment of a civil service commission that it should be in the competitive class. What was said in the quotation from the *Schau* case as to the disinclination of the court to interfere with the action of the commission on the subject of the wisdom of the classification, where there has been no abuse of discretion, should not extend to cases where the Legislature has specifically placed a position in the exempt class and such classification can be reconciled with the demands of the constitutional provision. Thus, if it should appear that the Magistrates' Courts are separate courts and the Legislature has exempted one clerk of each court by statute, the constitutionality of such a provision might still be doubtful if the position were not found to be one of personal confidence. But the decision as to whether a given position is one of personal confidence could not be made without judicial inquiry, and merely on the basis of the *Schau* case as to the existence of a fair and reasonable ground for difference of opinion. A judicial inquiry would be appropriate to decide whether the preponderance of evidence indicates the position to be a confidential one in a technical sense or not. And if it appeared of this character the legislative sanction would have

to be upheld by the court. Consequently, we must examine whether the separate clerks of the Magistrates' Courts come within the purview of section 13 of the Civil Service Law. If they do, the position of the petitioner might have been sustained, unless it clearly appeared that the legislative direction was contrary to the Constitution, and this we cannot say. Thus, for example, as was hinted in *Matter of Simons* v. *McGuire* (*supra*, 204 N. Y. 253, at p. 260), if the Legislature, after declaring in the statute that probation officers were confidential officers of the justices and magistrates, had not, in the course of the enactment of the law, struck out a specific provision that they should be exempt from competitive examination, the courts would not have interfered with the declaration by the Legislature of the nature of the position; such statement as to its confidential nature not being unreasonable.

On the other hand, if we should find that the exempt classification in the statute does not apply to the thirty-four individual clerks of the Magistrates' Courts, we need make no further inquiry and we must dismiss the petition without granting any alternative order of mandamus. To the examination of the intent of section 13 I shall now adress myself.

In *Matter of Friedman* v. *Finegan* (*supra*) the Court of Appeals decided that the clerks functioning in the several districts of the Municipal Court do not come within the purview of the language of section 13, which puts " one clerk, and one deputy clerk  *  *  * *of each court* " in the exempt class. Notwithstanding the existence of numerous districts of the Municipal Court, each with a separate clerk, a single clerk of the court as such, if that type of official existed, comes within the language of the statute. The basic reason for the interpretation of the statute in this respect was that the Municipal Court, notwithstanding its many district branches, was only one court. Unless petitioner can distinguish that case and show that the City Magistrates' Courts are many and not one, he must lose. At the argument before the Court of Appeals in the *Friedman* case it was urged that the Municipal Court system is not one court but a continuation of the several District Courts and Justices' Courts under a new name, and each of the District Courts is a court within the contemplation of subdivision 3 of section 13 of the Civil Service Law. That argument was evidently rejected by the high court.

A similar argument, based upon historical grounds, namely, that the City Magistrates' Courts are a succession of the old Police Courts, is made by the petitioner here, and for like reasons the argument based upon that ground must be rejected.

The main argument in support of his contention, however, is the use of " courts " in the plural wherever City Magistrates' Courts is referred to in the Inferior Criminal Courts Act, whereas in the Municipal Court Code, as well as in the city charter, where the Municipal Court is mentioned, it is always spoken of in the singular. That grammatical basis upon which to found an argument for exemption is rather thin. In the light of the background of the law and the constitutional and legislative provisions with reference to the different courts in our judicial system, the argument has only weak support.

In the *Friedman* case the conclusion that the Municipal Court was a single one was supported largely by the view of the Court of Appeals that: " Magistrates and Special Sessions judges are on a uniform basis. Why should the Municipal Court hold any different position?" It is difficult to find a stronger anticipation of the probable view of the Court of Appeals on the singleness of the Magistrates' Courts despite the grammatical plural than the statement just quoted. The singleness of a court is not measured by the fact that it occupies one building or one court house. It is the unity of function and power that makes it a single court. The Supreme Court is constitutionally one court; so is the City Court of the City of New York, the Municipal Court of the City of New York, the Court of Special Sessions for the City of New York, and the Court of General Sessions of the County of New York; and yet the latter court is the only one of those enumerated which is concentrated in one court house. The County Courts are not a single court although uniform in function in their respective jurisdictions. The County Courts lack the connecting unity which is given to City Magistrates' and Municipal Courts by the board of magistrates and the chief city magistrate in one case and the board of justices and the president justice in the other. Even though the Supreme Court is a single court, there are discrete divisions of it which require separateness of administration, and accordingly the Constitution makes the county clerk of each county the clerk of the Supreme Court and of the County Court of the county as well. There are thus sixty-two clerks of the Supreme Court, all in the exempt class, although there is only one Supreme Court. And so, by special constitutional provision, there is a clerk for each one of the four Appellate Divisions. Considerations beyond those of the singular or plural use of the word in the statute govern the reason for having one or more confidential clerks within the intendment of the law and the constitutional provision authorizing it. While the appointment of many of those confidential clerks is specifically authorized and directed by the Constitution, authority to appoint

such clerks in numbers more than one would exist, notwithstanding the fact that the Supreme Court is functionally and jurisdictionally one court. Considerations of convenience of venue in bringing actions and other points too numerous to mention would dictate the necessity of having a separate confidential clerk for each county in which the Supreme Court exercises its powers.

At one time, too, the question arose whether in the counties of the State where the facilities of the Supreme Court must keep pace with the demands made upon it, and where accordingly there are a number of Trial and Special Terms running concurrently, the clerk of each part is not brought within the intent of section 13 of the Civil Service Law. This question actually arose in *Matter of Meahl* v. *Ordway* (98 Misc. 394, 397). The clerks assigned to the various Trial and Special Terms of the Supreme Court are known as special deputy county clerks. Until 1914 they were in the exempt class. In 1914 the State Civil Service Commission, with the approval of the Governor, put them into the competitive class. A peremptory writ of mandamus was sought to compel the commission to reclassify and place the deputy county clerks appointed to act as court clerks in the exempt class. The petition was sought to be supported by the first subdivision of section 13, which placed in the exempt class the deputies of principal executive officers authorized by law to act generally for and in place of their principals. This argument was rejected on the ground that deputy county clerks assigned to the courts had no power to represent the county clerk generally, but only with reference to the business of the court. The second argument was based upon subdivision 3 of that section, which exempted one clerk and one deputy clerk of each court; the argument being that each part of the court was substantially a separate court. This argument was rejected in the following interesting language: " The petitioner argues that because in Erie county there are held six parts of the Supreme Court that therefore there are six Supreme Courts and that one special deputy clerk assigned to each part is and properly should be in the exempt class. There are not six Supreme Courts in Erie county, no more are there twenty-one Supreme Courts in New York county; there is only one Supreme Court in the State. This with all respect to the expressions by the Nevada court. (*State* v. *Atherton*, 19 Nev. 332.) "

The court then proceeds to justify the placing of such clerks in the competitive class in the following remarks:

" It follows that the special deputy clerks assigned to the courts are not exempt under the law. If it had been intended by the Legislature in framing the Civil Service Law to make the exemption

so that all special deputy clerks of the several parts of the Supreme Court should thus be classified it would have been a simple legislative act to provide. If the Legislature did not provide it, it is not for the court to make the law.

" Experience and almost common knowledge teach us that competitive examination is entirely practicable as a method of ascertaining merit and fitness of candidates for the position of court clerk. We find no statute, nor any construction of a statute, which permits us to sustain the contention of the county clerk. The classification by the State Civil Service Commission, not being palpably illegal, must be regarded as final."

In this department, by way of illustration, the special deputy clerks are appointed by the justices of the Appellate Division, First Department, pursuant to section 269 of the Judiciary Law. The incumbents with that title assigned to Special Term, Part I, Special Term, Part II, and Special Term, Part III, and the one assigned to Trial Term, Part II, have positions of the highest responsibility and confidence. They are all products of the competitive system and their selection in that way has been found practicable and has worked successfully. If the Legislature, prior to the commission's placing of these deputy clerks in the classified service, had by statute permitted each part of the court to be administered by a clerk in the exempt class, there probably would have been no judicial interference with the legislative intent on the score of a possible conflict with the Constitution. There is enough of both a departmental head function and of a confidential relation in the case of these clerks — more so, in fact, than in the case of clerks of the Magistrates' Courts — to vindicate any possible statute which the Legislature might have adopted in respect of the exemption of those clerks of the Supreme Court. While there is an absence of a confidential relation to a particular person whom the clerk serves, it cannot be said that such clerks should absolutely be classified as exempt in the sense that personal secretaries and attendants of the judges are. But, as I said, there might have been enough circumstances to justify the wisdom of the Legislature if it had placed those Supreme Court clerks, who are heads of parts, in the exempt class. Whether the Legislature could do so today, after experience has proved the practicability of their selection by competitive examination, is a question that does not have to be answered. Possibly it could not, in the absence of a showing of the development of weaknesses by reason of the elimination of the right of personal choice by the appointive officer. Until this is established, limits exist to the legislative right of exemption. In this connection it is interesting to note the remarks of Judge CARDOZO in *Matter of Ottinger* v. *Civil*

*Service Commission* (240 N. Y. 435, 440) as to the power of the Legislature to classify. The question arose as to the right of the Legislature to empower the Attorney-General, in connection with administration of article 23-A of the General Business Law, in his discretion, and without civil service examination, to appoint and employ, and at his pleasure remove, such deputies, officers, and other persons as he deems necessary. It developed out of the refusal of the State Civil Service Commission to accord exempt status to nine appointments of the classification of stenographers and clerks, although acquiescing in the exempt status of special deputies, deputies and investigator. In refusing a petition for a mandamus to compel the commission to grant the requested exemption, the court, speaking through Judge CARDOZO, conceded the right of the Legislature to classify only " if its classification can reasonably be regarded as a genuine endeavor to extend the constitutional test to the limit of the practicable. (*People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92, 99; *Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435, 443.) What that limit is may not be determined as an abstraction or irrespective of experience. The very fact that there exists and has long existed a commission dealing with exemptions in the setting of the concrete instance, is something not to be ignored when a whole bureau or department is declared exempt in gross. The Legislature retains the power of selection among means appropriate to the end, but choice must rest upon reason and not upon caprice. To know the limit of the practicable, we must give heed to methods and institutions that are functioning in practice. To mark the frontier of the attainable we must find the line attained."

If there is no reason for regarding the administrative clerks in the parts of the Supreme Court as persons entitled to exemption, there is even less reason to treat the clerks of the separate Magistrates' Courts as entitled to that privilege. While justification for not exempting the clerks of the separate parts of the Supreme Court from examination might be sought in the language of section 13, because the Supreme Court is only a single court, as a matter of fact, the several City Magistrates' Courts are to a greater degree constituent parts of a single court than some of the clerks of the higher court included in the competitive class. An examination of the Inferior Criminal Courts Act fully justifies the dictum in *Friedman* v. *Finegan* that magistrates and Special Sessions judges are on a uniform basis, the effect of which dictum is a holding that the City Magistrates' Courts constitute a single court.

Thus, by section 81 (formerly section 51) of the Inferior Criminal Courts Act (as amd. by Laws of 1931, chap. 547; renum. § 81 by

Laws of 1933, chap. 746, § 9) the chief city magistrate, as adminis-trative head of the system of Magistrates' Courts, has general supervision of the business of all the courts. He prescribes the number of city magistrates' clerks and prescribes the hours of attendance of city magistrates' clerks and employees. With the aid of a committee of city magistrates he makes assignments of the city magistrates to sit in the various District Courts. He establishes and supervises the system for keeping the records of each court. By section 84 he assigns the clerks and other employees to such courts and to such duties as he may determine. The board of city magistrates, presided over by the chief city magistrate, investigates all complaints pertaining to the courts, to the magis-trates, or to the employees, and it makes, alters and amends " rules regulating the practice and procedure, which shall be uniform, so far as practicable, in all City Magistrates' Courts." (§ 91 [formerly § 59], as amd. by Laws of 1931, chap. 547, § 2; renum. § 91 by Laws of 1933, chap. 746.)

The unity of organization, together with the uniformity of the rules, marks the City Magistrates' Court system as more closely knit as a uniform whole than the constituent parts of the Supreme Court. Even though the latter is a single court, rule 2 of the Rules of Civil Practice provides for the adoption of the Appel-late Division of each department and of any other court of record, such further rule for the conduct of business as it may deem neces-sary, not inconsistent with the Rules of Civil Practice. Accord-ingly, we find various special rules peculiarly applicable to the Trial Term or Special Term of one district, not entirely in harmony with those of another district but suitable to its peculiar needs. The separate system of rules adopted by different divisions or terms of the Supreme Court is in marked contrast to the absolute uniformity prescribed for the City Magistrates' Court. The full power given to the chief magistrate and the board of city magistrates to make assignments of the judges, shifting them from one court to another according to a planned schedule, indicates how little there is to the argument of the separate entity of each one of the so-called Magistrates' Courts. Enough has been said to prove that the gram-matical plural form used in the Inferior Criminal Courts Act is the sole argument which remains to sustain the contention of the petitioner. An examination of the functional unity of the Magis-trates' Courts indicates that the linguistic plural is a mere accident of phraseology and of no consequence in determining the question.

I, therefore, come to the conclusion on this phase of the argument that City Magistrates' Courts are not separate courts but branches of one court, and the clerks are, therefore, not entitled by force of

that statute to remain in the exempt class. I have already shown that the action of the municipal civil service commission in putting them into the competitive class is not arbitrary, but, on the contrary, entitled to decisive consideration under the circumstances.

Accordingly, the petition for a mandamus is denied.